William KOTTKA and Janet Kottka, Plaintiffs-Appellants,

AETNA INSURANCE COMPANY and Northern Insurance Company of New York, Subrogated Parties,

MARYLAND CASUALTY INSURANCE COMPANY and Wausau Insurance Companies, Subrogated Parties-Respondents,

v.

PPG INDUSTRIES, INC., a foreign corporation and Hidrite Chemical Company, Defendants.

William KOTTKA and Janet Kottka, Plaintiffs-Appellants,

AETNA INSURANCE COMPANY and Northern Insurance Company of New York, Subrogated Parties,

MARYLAND CASUALTY INSURANCE COMPANY and Wausau Insurance Companies, Subrogated Parties-Respondents,

v.

KEPRO CIRCUIT SYSTEMS, INC., a foreign corporation, Defendant.†

Supreme Court

*No. 85–0933. Argued April 1, 1986.—Decided June 4, 1986.*

(Also reported in 388 N.W.2d 160.)

† Motion for reconsideration denied July 25, 1986, without costs.

For the plaintiffs-appellants there were briefs by *James A. Olson* and *Lawton & Cates,* Madison, and oral argument by *Mr. Olson.*

For the respondent, Maryland Casualty Insurance Company, there was a brief by *John Koeppl* and *Stafford, Rosenbaum, Rieser & Hansen,* Madison, and oral argument by *Mr. Koeppl.*

For the respondent, Wausau Insurance Companies, there was a brief by *Peter L. Topczewski* and *Law Offices of Straub and Schuch,* Milwaukee, and oral argument by *Mr. Topczewski.*

Amicus curiae brief was filed by *D.J. Weis, James A. Johnson* and *Johnson, Weis, Paulson & Priebe, S.C.,*

501

Rhinelander, for the Wisconsin Academy of Trial Lawyers.

BABLITCH, J.   Janet Kottka, the wife of the injured (now deceased) employe, William Kottka, appeals. She asks this court to determine whether the circuit court properly applied sec. 102.29(1), Stats., of the Worker's Compensation Act. Section 102.29(1) provides for the allocation of the proceeds of the settlement of a third party tort action. The statute directs how the proceeds are allocated between the person receiving the proceeds from a third party and the employer or the compensation insurer.

The circuit court set aside the formula for allocation provided in sec. 102.29(1), Stats., and approved an alternative allocation. We conclude that the court exceeded its authority under the section by allocating the proceeds of the third party action according to a nonstatutory formula without obtaining consent of all parties. We agree with the circuit court that the proceeds of the injured employee's claim for pain and suffering were subject to allocation. The circuit court also determined that the spouse of the injured employe was not entitled to bring a claim for loss of consortium which she suffered between the time of the employe's injury and the time of the employe's death. We conclude that a spouse is entitled to bring a claim for loss of consortium in these circumstances, and that the amount attributable to recovery on this claim is not subject to allocation.

The underlying facts are undisputed. In April, 1983, William Kottka (William) died of pancreatic cancer, a condition which doctors diagnosed nearly 15 months earlier. Prior to his death, he brought a work-

er's compensation action against his employer, alleging that his exposure to the chemical trichloroethylene in his workplace caused his cancer as well as other toxic effects. He also commenced third party actions against manufacturers and distributors of trichloroethylene, asserting that they were liable for his injury. His wife, Janet Kottka, (Janet) joined in the third party actions; she asserted a claim against the same parties for damages from loss of consortium caused by her husband's alleged injury. His employer and its worker's compensation insurers also joined as subrogated parties in these actions.

Following William Kottka's death, Janet Kottka continued her action for loss of consortium and added a claim for damages from wrongful death, pursuant to secs. 895.03 and 895.04(4), Stats. As personal representative of William's estate, she continued her husband's actions as survival actions, pursuant to sec. 895.01.

On March 16, 1984, the circuit court approved Janet Kottka's settlement of all claims against the manufacturers and distributors of trichloroethylene for a total of $232,500. In April, 1985, William Kottka's worker's compensation action was still pending before the Wisconsin Department of Industry, Labor and Human Relations (Department). On April 30, 1985, the circuit court allocated the proceeds of Janet Kottka's settlement. At this time the worker's compensation insurers of William's employer disagreed with Janet Kottka concerning the portion of the total settlement which must be credited, pursuant to sec. 102.29(1), Stats., against any payments which they would make if the Department determined that William's injury and death were work related. For this reason, Janet and the insurers asked the court to allocate the pro-

ceeds of the settlement, specifically determining the portion of the settlement for which the insurers would receive a credit against future payments.

The circuit court determined that Janet Kottka could unilaterally waive her rights under sec. 102.29(1), Stats., and elect an alternative allocation of the settlement. Following an evidentiary hearing, it allocated to Janet a total of $99,337, which included $25,000 to compensate her for damages for "loss of consortium," pursuant to sec. 895.04(4), and $74,337, to reimburse her for costs of collecting the balance of the settlement. It allocated the remainder of the settlement, $133,163, as a credit against the insurers' future payments. The court further determined that Janet was not entitled to recover on her claim for loss of consortium during the period between William Kottka's injury and his death.

Janet Kottka appealed from the court's allocation by petition to bypass the court of appeals. We dismissed the petition to bypass, but certified the case and accepted jurisdiction on our own motion pursuant to sec. 809.61, Stats. The worker's compensation insurers, Maryland Casualty Company and Wausau Insurance Companies, (the insurers) oppose the appeal. The Wisconsin Academy of Trial Lawyers (the amicus) supports Janet as amicus.

The issues on appeal are: (1) did the circuit court exceed its authority under sec. 102.29(1), Stats., by allocating the proceeds from Janet Kottka's settlement of the third party actions according to a nonstatutory formula without consent of all the parties; (2) are the proceeds of the settlement attributable to William Kottka's claim for pain and suffering subject to allocation under sec. 102.29(1); and (3) may Janet Kottka bring

a claim for loss of consortium for the period of William Kottka's disability up to his death? If so, must the court exclude her recovery on this claim from the fund subject to allocation under sec. 102.29(1)?

To resolve the issues on appeal, we must construe sec. 102.29(1), Stats. Construction of statutes is a question of law. *Sacotte v. Ideal-Werk Krug & Priester*, 121 Wis. 2d 401, 405, 359 N.W.2d 393 (1984). We need not defer to the trial court when deciding a question of law. *Ball v. District No. 4, Area Board*, 117 Wis. 2d 529, 537, 345 N.W.2d 389 (1984).

*Issue 1: Did the circuit court exceed its authority under sec. 102.29(1), Stats., by allocating the proceeds from Janet Kottka's settlement of the third party actions according to a nonstatutory formula without consent of all the parties?*

When the circuit court allocated the proceeds of Janet Kottka's settlement of the actions against the manufacturers and distributors of trichloroethylene, it adopted standards for allocation set forth in a Minnesota case, *Henning v. Wineman*, 306 N.W.2d 550 (Minn. 1981), discussed in the footnote below.[1] As a result, the

---

[1] In *Henning* the Supreme Court of Minnesota construed sec. 176.061(6), Minn. Stats., a worker's compensation statute with some facial similarity to sec. 102.29(1), Stats. The court stated that the extent of the employer's subrogation interest in proceeds of a third party settlement under sec. 176.061(6) could be determined in either of two ways at the option of the employe. Under the first option, the formula for allocation of proceeds is applied to the total amount of the settlement which is attributable to the employe's claims. In that event the district court which approves the settlement does not distinguish amounts of the proceeds recoverable under worker's compensation; the employe is compensated for nonrecoverable damages by the statutory allocation of one-third of the

court permitted Janet to waive her rights under sec. 102.29(1), Stats., and to receive an allocation from a fund which the court defined according to standards which it derived from *Henning*. Janet Kottka agreed to this departure from the requirements of sec. 102.29(1); the insurers did not.

Janet Kottka argues that the circuit court correctly adopted standards from *Henning* in allocating the proceeds of the settlement, but erred in its application of the standards by including recoveries from certain claims in the fund subject to allocation. She contends that construing sec. 102.29(1), Stats., according

settlement amount remaining after subtraction of costs, free from the employer's interest. Under the second option, the district court allocates the settlement proceeds between amounts recoverable and not recoverable under worker's compensation and applies the statutory formula to only the portion of the proceeds which represents recoverable damages. An employe who chooses the second option forfeits the statutory right to one-third of the recovery. In addition, the court considers only the portion of the costs of collection attributable to recoverable damages when allocating the proceeds. *Id.* at 552–53. In *Henning* the court held that district courts have jurisdiction to allocate proceeds of a third party settlement between recoverable and nonrecoverable amounts. In a prior case, the court had determined that damages which are not recoverable under worker's compensation are not subject to allocation under sec. 176.061(6). *Naig v. Bloomington Sanitation,* 258 N.W.2d 891 (Minn. 1977). In *Naig* the court construed sec. 176.061(6)(b), which permits an employe or dependent to receive one-third of a settlement after deduction of specific costs, ". . . without being subject to any right of subrogation . . .," in conjunction with sec. 176.061(5), which defines the scope of the employer's right to subrogation and its right to allocation of a share of judgments or settlements. *Id.* at 892–93. The court concluded that the employer had no rights to a credit against proceeds from claims to which it was not subrogated. *Id.* at 895.

to the standards of *Henning* constitutes a remedial reading of the section, rather than a deviation from its requirements. She further argues that the Minnesota court's approach in *Henning* is equitable and should apply in this case.

At issue throughout this appeal is the application of the Worker's Compensation Act, ch. 102, Stats. As this court has previously stated:

> ". . . worker's compensation laws constitute an all-pervasive legislative scheme which attempts to effect a compromise between the employer and the employee's competing interests. The worker is benefitted by certain recovery irrespective of his own fault and irrespective of the employer's absence of fault. Additionally, the worker's compensation legislation abrogated an employer's common law defenses of contributory negligence, assumption of risk, and the fellow-servant rule. Although the employer's defenses were abrogated, simultaneously the worker was obliged to accept a limited and scheduled compensation award." *Mulder v. Acme-Cleveland Corp.,* 95 Wis. 2d 173, 180, 290 N.W.2d 276 (1980).

As part of this all-pervasive scheme, the legislature provides a formula in sec. 102.29(1), Stats., for the distribution of proceeds from a claim by a employ, the employer or certain other persons against a third party, based on the injury or death of the employe. In relevant part, sec. 102.29(1) provides:

> "The making of a claim for compensation against an employer or compensation insurer for the injury or death of an employe shall not affect the right of the employe, the employe's personal representative, or other person entitled to bring ac-

tion, to make claim or maintain an action in tort against any other party for such injury or death, hereinafter referred to as a 3rd party. . . . The employer or compensation insurer who shall have paid or is obligated to pay a lawful claim under this chapter shall have the same right to make claim or maintain an action in tort against any other party for such injury or death. However, each shall give to the other reasonable notice and opportunity to join in the making of such claim or the instituting of an action and to be represented by counsel. . . . If notice is given . . . the liability of the tort-feasor shall be determined as to all parties having a right to make claim, and . . . the proceeds of such claim shall be divided as follows: After deducting the reasonable cost of collection, one-third of the remainder shall in any event be paid to the injured employe or the employe's personal representative or other person entitled to bring action. Out of the balance remaining, the employer or insurance carrier shall be reimbursed for all payments made by it, or which it may be obligated to make in the future, under this chapter [with some exceptions]. . . . Any balance remaining shall be paid to the employe or the employe's personal representative or other person entitled to bring action. . . . A settlement of any 3rd party claim shall be void unless said settlement and the distribution of the proceeds thereof is approved by the court before whom the action is pending and if no action is pending, then by a court of record or by the department."

A leading commentator describes the purpose of third party action provisions as twofold: to preserve a right of action against the tortfeasor, when compensable injury is the result of a third person's tortious conduct, on grounds that the compensation system was not de-

signed to extend immunity to strangers to the worker-employer relationship, and to avoid double recovery by a claimant. 2A Larson, *Workmen's Compensation Law,* sec. 71.00, p. 14–1 and sec. 71.20, p. 14–3.

In *Huck v. Chicago, St. P., M. & O.R. Co.,* 14 Wis. 2d 445, 449, 111 N.W.2d 434 (1961), we addressed the issue of the equitableness of the formula for allocation of proceeds from settlements of third party actions which our Worker's Compensation Act provides. We wrote:

> "We assume that in many situations, persuasive arguments could be advanced that a particular division would be more just and equitable than that decreed by the legislature. Nevertheless, the formula does channel a portion of the net proceeds after costs of collection to each of the interested parties, and the legislature evidently considered it better policy to divide the funds by the formula it devised than to commit the matter to the discretion of the court. . . ." *Id.* at 449–50.

In *Huck* we considered whether a circuit court could divide settlement proceeds according to a nonstatutory formula. We construed the final sentence of sec. 102.29(1), Stats., as follows:

> "Although under this sentence the court or commission could, in the exercise of discretion, approve a division of proceeds upon which the parties agreed, even though it might vary from the statutory formula, we do not view this sentence as giving the court or commission power to divide the proceeds in a manner different from the statutory formula in the absence of the consent of the parties." *Id.* at 450.

There is no dispute that in this case the circuit court acted without consent of all the parties in allocating the proceeds of the settlement. Janet Kottka sought an alternative allocation of the settlement proceeds. Under her proposed allocation her recovery on certain claims would not be included in the fund subject to allocation under sec. 102.29(1), Stats., and the credit which would be available to the employer and its insurers would be reduced to reflect the difference between the value of her third party claims and her recovery on these claims. In response to this proposal, the court offered Janet the option to waive rights under the section. In exchange for this waiver, the court allocated the proceeds according to its own formula, adopted from the *Henning* case. The court characterized this formula throughout its decisions as an allocation of proceeds between "compensable and noncompensable elements of damages."

Section 102.29(1), Stats., unambiguously directs the court that it "shall" divide "the proceeds" of claims for the injury or death of the employe according to the formula which the statute provides. As we recognized in *Huck,* the duty of the circuit court in an allocation of settlement proceeds from a third party action under sec. 102.29(1), is not to determine the equitableness of the statutory formula, but to apply the formula as provided in the statute unless the parties agree to an alternative allocation. *Id.* at 450. In this case the court applied its own, alternative formula for allocation and did not require consent of the parties. For this reason, we hold that the court exceeded its authority under sec. 102.29(1), and we remand the cause for allocation in accordance with the statute.

In addition, Janet Kottka argues that a court should limit the fund subject to allocation by "discounting" the fund in proportion to the difference between the amount of the third party claims and the amount of the settlement. Like her argument regarding the merits of the Minnesota approach to allocations of third party settlements, this argument raises a policy question of whether an allocation formula which takes into account that the value of settlements is less than the value assigned to the underlying claims would be more equitable than the formula of sec. 102.29(1), which makes no reference to "discounting" the fund subject to allocation. As this court recognized in *Huck,* the legislature ". . . evidently considered it better policy to divide the funds by the formula it devised than to commit the matter to the discretion of the court. . . ." *Id.* at 449–50. The formula mandated by the statute does not speak to the "discounting" urged upon us by Janet Kottka. Her argument is best addressed to the legislature.

*Issue 2: Are the proceeds of the settlement attributable to William Kottka's claim for pain and suffering subject to allocation under sec. 102.29(1), Stats.?*

In his worker's compensation claim against his employer and in his actions against the manufacturers and distributors of trichloroethylene, William Kottka alleged that he suffered toxic effects and cancer as the result of exposure to the chemical at the workplace between 1974 and 1979. He further alleged that he suffered pain and emotional trauma as the result of his exposure and would suffer permanent disability which would cause pain, suffering and emotional trauma in the future and impair his ability to enjoy life.

At the evidentiary hearing, Janet Kottka offered testimony regarding William Kottka's pain and suffering. By her attorney she stated that, for the purpose of the hearing, all of William's damages resulted from his exposure to trichloroethylene at work.

In both memorandum decisions the court concluded that the only damages for William Kottka's pain and suffering which it could exclude from the fund subject to allocation would be claims for pain and suffering which did not interfere with William's working capacity or which were not causally connected to a work related incident and disability, citing *Shymanski v. Industrial Comm.,* 274 Wis. 307, 79 N.W.2d 640 (1956). Because the court found that all of William's claims for pain and suffering related to reduced work capacity or were causally connected to a work related incident or disability, it did not exclude any amount attributable to these claims from the fund subject to allocation.

Janet Kottka and the amicus argue that proper application of the *Henning* approach excludes William Kottka's damages for pain and suffering from the fund subject to allocation. Alternatively, Janet contends that William Kottka's claim for pain and suffering was not a "claim" within the meaning of sec. 102.29(1), Stats., because it was not a "claim for compensation against an employer" or a claim "for injury or death." She maintains that sec. 102.29(1) applies only to such claims.

Having concluded above that the circuit court exceeded its authority by applying a nonstatutory formula for allocation of the settlement proceeds in this case, we do not consider whether William Kottka's damages for pain and suffering was excludable from

the allocation fund under the standards of *Henning,* as adopted by the circuit court. Therefore, we turn to the question of whether William's claim for damages for pain and suffering allegedly caused by exposure to trichloroethylene at work is a "claim" within the meaning of sec. 102.29(1), Stats., and, included in the fund subject to allocation.

In effect, Janet Kottka urges us to construe the opening sentence of sec. 102.29(1), Stats., as a limitation on the category of claims whose settlement is subject to allocation between the employe and the employer and its insurer under this section. We conclude that construction of the section which she advocates lacks merit.

The opening sentence of sec. 102.29(1), Stats., protects the right of the employe, personal representative and certain other persons to make a claim or maintain an action in tort against a third party for the employe's injury or death when also bringing a worker's compensation claim. The sentence states that "[t]he making of a claim for compensation against an employer or compensation insurer for the injury or death of an employe shall not affect . . ." that right. The remainder of sec. 102.29(1) provides, in part, that "[t]he employer or compensation insurer who shall have paid or is obligated to pay a lawful claim under this chapter shall have the same right to make claim or maintain an action in tort against any other party for such injury or death" and that ". . . proceeds of such claim shall be divided . . ." according to a formula. We conclude that the language on which Janet Kottka relies establishes the right of the employe, personal representative and certain other persons to bring actions in tort against third parties for the employe's injury or death in addition to bringing

worker's compensation claims. This language does not define a category of employe claims which is beyond the scope of this section.

We construe sec. 102.29(1), Stats., to apply to all claims in tort for an employe's injury or death for which the employer or its insurer has or may have liability. As one commentator emphasizes, this section ". . . preserves to an employer or compensation insurer, the same right possessed by an employee to bring suit against a third-party whose negligence caused injuries to the employee." *See* Arnold, "Third Party Actions and Products Liability," 46 Marq. L. Rev. 136 (1962). *See also Murray v. Dewar,* 6 Wis. 2d 411, 415 94 N.W.2d 635 (1959), holding that sec. 102.29(1) does not create an independent cause of action for the employer's sake only and describing the employer or insurer under this section as standing ". . . in the shoes of the beneficiary to whom it has paid or is to pay compensation."

Our construction gives full effect to the legislative scheme of the Worker's Compensation Act because it permits all parties with an interest in employe tort claims related to workplace injury or death to prosecute these claims against third parties and to share in the proceeds, but does not permit employers or their insurers to invade claims which belong to the employe only. In addition, construing sec. 102.29(1), Stats., in this manner comports with ". . . the prevailing rule in the United States [which] refuses to place an employee's third-party recovery outside the reach of the employer's lien on the ground that some or all of it was accounted for by damages for pain and suffering." Larson at sec. 74.35, p. 14–476. (Footnotes omitted.)

■ In this case Janet Kottka argues that William Kottka's exposure to trichloroethylene at work caused his pain and suffering. Because the underlying allegation in William Kottka's claim against his employer is that exposure to this chemical at work caused his injury and his death, the employer and its insurers may incur liability for his injury and death under ch. 102, Stats. Given these circumstances, we conclude that William's claim for pain and suffering falls within the category of claims to which sec. 102.29(1), applies. Therefore, we hold that the circuit court properly included recovery for this claim in the fund subject to allocation. We affirm the court's order in that respect.

*Issue 3: May Janet Kottka bring a claim for loss of consortium for the period of William Kottka's disability up to his death? If so, must the court exclude her recovery on this claim from the fund subject to allocation under sec. 102.29(1), Stats.?*

In this case the circuit court ruled that Janet Kottka's only right to recover damages for loss of consortium arose under sec. 895.04(4), Stats., and, therefore, that her damages were limited to $25,000 by that section, cited below.[2]

The parties do not dispute whether the court must exclude Janet Kottka's recovery for loss of consortium after William Kottka's death from the fund subject to

---

[2] When Janet Kottka brought her action alleging damages from William Kottka's wrongful death, sec. 895.04(4), Stats., provided, in relevant part: "Judgment for damages for pecuniary injury from wrongful death may be awarded to any person entitled to bring a wrongful death action. Additional damages not to exceed $25,000 for loss of society and companionship may be awarded to the spouse . . . of the deceased."

allocation. For this reason, we do not decide whether her recovery under sec. 895.04(4), Stats., must be excluded from the fund subject to allocation. The record shows that the insurers stipulated that $25,000 represents appropriate compensation to Janet under sec. 895.04(4).

Janet Kottka argues that the circuit court erred by holding that her right to recover damages for loss of consortium is limited to her right to recover damages from wrongful death under sec. 895.04(4), Stats. She claims that the common law establishes her independent right to bring an action for compensation for loss of consortium caused by injuries to her spouse. *Moran v. Quality Aluminum Casting Co.,* 34 Wis. 2d 542, 150 N.W.2d 137 (1967). The only limit on that right is that she may not bring the action against an employer. *Rosencrans v. Wisconsin Telephone Co.,* 54 Wis. 2d 124, 128, 194 N.W.2d 643 (1972). She maintains that sec. 895.04(4) compensates only the loss of society and companionship which results from a spouse's death; it does not compensate a spouse for a loss of consortium which occurs during a spouse's disability prior to death. Accordingly, she maintains that her cause of action for loss of consortium during the final months of her husband's life was not extinguished at William Kottka's death, but that his death created grounds for a different recovery under sec. 895.04(4).

Together the insurers assert that Janet Kottka's claim for loss of consortium during the last months of her husband's life is included in her claim for "additional" or nonpecuniary damages following his death, pursuant to sec. 895.04(4), Stats. They argue that a spouse's common-law claim for loss of consortium due to injury to the other is extinguished if the injured spouse dies

of the injuries or, alternatively, that the claim survives, but is limited in amount by sec. 895.04(4). The insurers urge us to conclude from the legislature's creation of a statutory remedy for loss of society and companionship due to a spouse's wrongful death that the legislature intended to limit all recovery for a spouse's loss of consortium to the amount set in sec. 895.04(4).

When we first recognized a common-law cause of action for parental loss in the event of negligent injury to a minor child, we distinguished the parents' recovery for loss of a child's society and companionship, as an element of statutory damages for wrongful death, from the parents' recovery for the same type of loss during the life of the injured child in order to provide a remedy for the actual losses which injury to a child causes to the parents. *Shockley v. Prier,* 66 Wis. 2d 394, 400–01, 255 N.W.2d 495 (1975). The same policy leads us in this case to distinguish Janet Kottka's claim for loss of William Kottka's society and companionship resulting from his death from her claim for loss of consortium between the time of William's alleged injury and his death.

Describing the first wrongful death statutes in this country, McCormick stated that wrongful death statutes created a cause of action for the benefit of certain surviving relatives and permitted damages ". . . *proportioned to the injury resulting from . . . death. . . .*" C. McCormick, *Damages* 345 (1935). (Emphasis added.) These damages represented a protection, after the death of the injured family member, of the survivor's familial interests. McCormick specifically distinguished the damages resulting from the death of a family member from those ". . . *which are asserted during the lifetime of the injured persons through such actions*

*as the husband's for injury to his wife." Id.* (Emphasis added.)

Wrongful death statutes in this state conform to McCormick's description. Earlier versions of sec. 895.04, Stats., authorized the jury to award damages only for ". . . the pecuniary injury resulting from [wrongful] death." *See, e.g.,* ch. 71, Laws of 1857; ch. 35, Laws of 1915 and sec. 331.04, Stats. 1925. However, after 1931, subsequent versions of the section also authorized recovery of damages by spouses for "loss of society and companionship." *See* ch. 263, Laws of 1931. This provision for recovery of "additional" damages for loss of society and companionship did not create a separate cause of action, but only added an element of damages to the wrongful death statute. *Herro v. Steidl,* 255 Wis. 65, 67, 37 N.W.2d 874 (1949).

We measure damages for loss of society and companionship under sec. 895.04(4), Stats., in ways which indicate that the recovery compensates only the nonpecuniary, private losses which result from the death of a close relative. We consider such factors as ". . . the characteristics of the deceased spouse, the susceptibility of the surviving spouse to suffering, and the conduct and affection of the spouses towards each other." *Cameron v. Union Automobile Ins. Co.,* 210 Wis. 659, 668, 247 N.W. 453 (1933). *See also Erikson v. Wisconsin Hydro-Electric Co.,* 214 Wis. 614, 619, 254 N.W. 106 (1934); and *Potter v. Potter,* 224 Wis. 251, 259, 272 N.W. 34 (1937). Accordingly, the standard jury instruction asks jurors to weigh and consider credible evidence

> ". . . bearing on the nature, form and quality of the relationship existing between the parties during the period of their marriage. . . . the ages, health, and life expectancies of the parties, the love

and affection afforded, the society and companion-
ship rendered . . . the conduct of one towards the
other during that period of time. . . . the traits and
dispositions of the parties insofar as they reveal the
ability, willingness, and inclinations of the deceased
to give and extend those marital benefits, *and the
survivor's susceptibility to suffer a loss for being de-
prived of them.*" WIS JI—Civil 1870. (Emphasis
added.)

■

   In contrast, the common-law right of spouses to
bring an action for loss of consortium compensates in-
juries to a spouse during the period of the injured
spouse's disability. Since 1967, we have recognized the
common-law right of wives as well as husbands to bring
an action for loss of consortium when the other spouse
is injured by the acts of a third party. *Moran* at 558.
Consortium involves ". . . a broad range of elements
such as love, companionship, affection, society, sexual
relations, and the right of support or the performance
of marital services, *any one of which is sufficient to con-
stitute a cause of action.*" *Schwartz v. Milwaukee,* 54
Wis. 2d 286, 292, 195 N.W.2d 480 (1972). (Emphasis
added.) Loss of consortium may involve a spouse's loss
of society and companionship during a disability. *Bal-
lard v. Lumbermens Mut. Casualty Co.,* 33 Wis. 2d 601,
614, 148 N.W.2d 65 (1967). It may also involve in-
creased care for the injured spouse, increased responsi-
bility for the children and a change in social position.
*Peeples v. Sargent,* 77 Wis. 2d 612, 642, 253 N.W.2d 459
(1977).
   In *Ballard* we stated that Wisconsin Jury
Instructions—Civil 1815 ". . . correctly states our posi-
tion that the loss to be compensated is for the aid, as-

sistance, comfort, society, and companionship *during the period of disability." Id.* at 613. (Emphasis added.) WIS JI—CIVIL 1815 indicates that damages for loss of consortium compensate spouses for such injuries as the diminishment of the marital relationship or the added emotional burden of maintaining family relationships with less help. The instruction states, in part:

> " 'Consortium' involves the love and affection, the companionship and society, the privileges of sexual relations, the comfort, aid, advice and solace, the rendering of material services, the right of support and any other elements that normally arise in a close, intimate, and harmonious marriage relationship. A wrongful invasion, impairment, or deprivation of any of these rights, *resulting from a disabling injury to a spouse,* is a legal loss and a basis for damages to the other spouse harmed or deprived.
>
> "In answering this question, you should consider the nature, the form, and quality of the relationship that existed between (the spouses) up to the time of the injury. Based on that relationship, determine what sum will represent fair and reasonable compensation for any loss of consortium that was sustained by the deprived spouse *as a result of the injury.*" (Emphasis added.)

Therefore, we reject the argument of the insurers that sec. 895.04(4), Stats., provides Janet Kottka's only right to recover for loss of William's society and companionship and hold that Janet Kottka's right to recover damages for her loss of society and companionship resulting from William's death pursuant to sec. 895.04(4) is additional to her common law right to re-

cover damages for loss of consortium prior to William's death.

█

We turn now to the question of whether the court must exclude Janet Kottka's recovery on her common-law claim for loss of consortium during William Kottka's disability from the fund subject to allocation. As we determined above, sec. 102.29(1), Stats., applies only to claims "for the injury or death of an employe" for which employer or its insurer has or may have liability. Because we conclude Janet Kottka's claim for loss of consortium is neither a claim "for the injury or death of an employe" under sec. 102.29(1) nor is it a claim for which the employer or its insurer has or may have liability, we further conclude that the court must exclude her recovery on this claim from the fund subject to allocation.

In *Fitzgerald v. Meissner & Hicks, Inc.*, 38 Wis. 2d 571, 579, 157 N.W.2d 595 (1968), this court stated that the elements of loss of society, affection and sexual companionship in a spouse's action for loss of consortium are personal to the claiming spouse and apart from the claim of the injured spouse. *Id.* at 581. The claim for a loss of consortium is derivative, in the sense that it does not arise unless the other spouse has sustained a personal injury. *Id.* However, the claim is not for the other spouse's personal injury but for the separate and independent loss which the noninjured spouse sustains. *Id. See also Korth v. American Family Insurance Co.*, 115 Wis. 2d 326, 329, 340 N.W.. 2d 494 (1983); *Peeples* at 643; and *Schwartz* at 293. Janet Kottka's claim for loss of consortium is, therefore, a claim for personal injury to her, not a claim "for the injury or

death of an employe" within the meaning of sec. 102.29(1), Stats.

In addition, the employer and its insurer have no liability for Janet Kottka's claim for loss of consortium. As this court has consistently held, the "exclusive remedy" provision of the Worker's Compensation Act, sec. 102.03(2), Stats., prevents the spouse of an injured employe from asserting a cause of action against the employer for loss of consortium caused by the employe's work-related injury. *Rosencrans* at 127–28. *See also Guse v. A.O. Smith Corp.*, 260 Wis. 403, 407, 51 N.W.2d 24 (1952). For this additional reason, Janet's claim is not within the scope of sec. 102.29(1).

Thus, because Janet Kottka properly asserted her common-law claim for loss of consortium prior to William Kottka's death in the third party action, we hold that the court must exclude a portion of the settlement which represents recovery on this claim from the allocation of proceeds under sec. 102.29(1), Stats., as well as the costs of collection of the claim. Accordingly, we reverse the order of the circuit court in respect to allocation of Janet's recovery on her common-law claim and remand the cause for further action consistent with this opinion.

*By the Court.*—The order of the circuit court is reversed in part and cause remanded with instructions, and affirmed in part.