Brenda DOBRATZ, Personally and as Special Administrator of the Estate of her deceased husband, Mark Dobratz, Plaintiffs-Respondents-Cross Appellants,†

v.

Gregg THOMSON, State Farm Fire & Casualty Company, Ron Abraham, West Bend Mutual Insurance Company, James C. Cooney, Transamerica Insurance Company, Thomas Smith, State Farm Fire & Casualty Company, Jeff Thomson, Sheboygan Falls Mutual Insurance Company, Bryan Hahn, Defendants-Appellants-Cross Respondents,

BLUE CROSS/BLUE SHIELD UNITED OF WISCONSIN, Defendant.

Court of Appeals

*No. 88-2320. Submitted on briefs September 11, 1989.—Decided March 8, 1990.*

(Also reported in 455 N.W.2d 639.)

†Petition to review granted.

For the defendants-appellants-cross respondents the cause was submitted on the briefs of *Michael S. Siddall* and *John D. Claypool* of *Herrling, Clark, Hartzheim & Siddall, Ltd.* of Appleton.

For the plaintiffs-respondents-cross appellants the cause was submitted on the briefs of *John E. Shannon, Jr.,* and *Russell T. Golla* of *Anderson, Shannon, O'Brien, Rice & Bertz* of Stevens Point.

Before Eich, C.J., Dykman and Sundby, JJ.

EICH, C.J. This is a summary judgment case involving the validity of a release signed by Mark Dobratz, who was killed while performing in a waterski show sponsored by Webfooter Water Shows, Inc., a non-profit corporation operating as a waterski club. Dobratz's widow, Brenda Dobratz, both as personal representative of his estate and in her own capacity, sued club officers and various participants in the show and their personal liability insurers. Both sides moved for summary judgment, the defendants seeking dismissal of the action on grounds that Dobratz had released all other participants from liability for negligence in connection with the performance, and Dobratz seeking a ruling that the release was invalid on public policy and other

310

grounds. The defendants appeal and Brenda Dobratz cross-appeals the trial court's denial of the motions.

The issues are: (1) whether the release signed by Dobratz prior to the show should be held unenforceable for reasons of public policy; and (2) if not, whether the trial court otherwise erred in denying the defendants' motion for summary judgment dismissing the action. The latter issue raises two ancillary questions: If the release is valid, does it reach (a) Brenda Dobratz's separate claim for her husband's wrongful death and loss of his society and companionship, and (b) the claim against the driver of the boat, which may involve reckless conduct.

We conclude that the release is not void on public policy grounds, and that it bars Brenda Dobratz's action in all respects except for her claim for loss of consortium and any claim based on reckless conduct by the driver of the boat. We therefore affirm in part and reverse in part and remand for further proceedings with respect to the latter claims.

The show in which Dobratz was participating contained an "act" in which several skiers being towed by a single boat were to discard their skis and continue skiing barefoot, soon to be followed into the "stage" area by a second boat and skiers. Dobratz was skiing behind the first boat and fell into the water while attempting the barefoot maneuver. While he was in the water he was struck by the second boat, and he died a few hours later from injuries suffered in the collision.

The action was brought against the drivers and "watchers" in the two boats, the show's director and Webfooter's president. Webfooter itself did not carry any insurance, and because the individual defendants' personal or homeowner's liability policies covered liability for damages caused by their negligence their insurers

311

were joined as parties. Both sides moved for summary judgment. The trial court denied the defendants' motion and never considered Dobratz's. The appeal and cross-appeal followed.

Taking the cross-appeal first, Brenda Dobratz, relying on *Merten v. Nathan,* 108 Wis. 2d 205, 321 N.W.2d 173 (1982), argues that the release is void as against public policy. *Merten* was a suit by a woman who was injured while taking horseback riding lessons. After the first lesson she signed a release exonerating the riding school from liability for any injuries she might incur while riding. The release contained a provision stating that the school did not have any insurance covering equestrian activities and that the plaintiff could only take the lessons if she signed the document. *Id.* at 208, 321 N.W.2d at 175. Because the school did in fact have insurance covering equestrian activities, the court held that the clause in the release stating to the contrary was a factual misstatement that went to the heart of the contract and, as a result, the agreement should not be enforced in light of the "public policies of protecting free and voluntary bargaining and of imposing liability on persons whose conduct creates an unreasonable risk of harm . . .." *Id.* at 213, 215, 321 N.W.2d at 178.

Explaining its reasoning, the court stated that the "no insurance" misrepresentation went "to the essence of the contract"; that is, that the stated lack of insurance required execution of the release if the student wanted to ride. *Merten,* 108 Wis. 2d at 213-14, 321 N.W.2d at 178. Thus, concluded the court, "[t]here can be no question that a statement that the defendants have no insurance protection is highly relevant to a reasonable student's decision to sign a contract which allocates to the student the losses arising out of equestrian activities." *Id.* at 214, 321 N.W.2d at 178. Then, noting that the concept of

freedom of contract "is premised on a bargain freely and voluntarily made through a process of bargaining which has integrity," the court explained the policies it believed voided the contract:

> If we were to enforce an exculpatory contract based on a false statement of fact relevant to a reasonable person's decision whether to execute the release, we would open the door to sharp practice. *Misstatements by the party seeking the release raise the strong suspicion of inequitable motive and overreaching and of lack of good faith or fair dealing on the part of the party seeking the release and of oppression of the party executing the release.* Even though all the elements of misrepresentation or mistake cannot be proved in a case involving an exculpatory contract . . . relief should be granted . . . when the probability of unfairness exists. In view of the public policies of protecting free and voluntary bargaining and of imposing liability on persons whose conduct creates an unreasonable risk of harm, *we conclude that it would be contrary to public policy to enforce an exculpatory contract when the bargaining process involves a mistake or deception which is relevant to a reasonable person's decision to execute a release allocating losses.* Accordingly we hold that the exculpatory contract in the instant case is unenforceable. *Id.,* 108 Wis. 2d at 214–15, 321 N.W.2d at 178 [emphasis added].

Brenda Dobratz's argument is based upon two documents submitted to the trial court in connection with the summary judgment motions. The first, an affidavit of Webfooter's president, Jeff Thomson, states that "[a]ll club members, as well as Mark Dobratz, fully understood that the reason for th[e] release was because of the club's lack of insurance coverage for injuries . . . to show participants . . .." The second is an excerpt

313

from a deposition in which the show's director, Bryan Hahn, states that it was his practice "to explain [the release] to everybody before they sign it . . . and we normally, when we hand it out, say the reason we have a release is because of our insurance, because of the bind with the insurance."

Based on this uncontradicted evidence, Brenda Dobratz contends that the case is on all fours with *Merten*—that the officers made false material representations regarding the existence of insurance to those signing the releases and, as a result, they should be negated as violating public policy, as was the release in *Merten.*

We disagree. *Merten* involved a misstatement of fact—a lie. The riding school represented that it had no insurance when in fact it did. Here, the statement that Webfooter did not have insurance was true. It did not. And the "policy" reasons underlying the court's decision in *Merten* have to do with misstatements of fact and false explanations. *Merten,* 108 Wis. 2d at 213-15, 321 N.W.2d at 178. They have nothing to do with the exculpatory nature of the contract itself.

Because there was no misrepresentation, misstatement or false explanation—to use the *Merten* court's words—in the sponsors' statement that Webfooter was uninsured, we consider the case to be distinguishable and not controlling on the issue before us.

We acknowledge that exculpatory contracts are closely scrutinized by the courts to see whether they "clearly express the intent of the parties so that with the surrounding circumstances, it is clear the parties knowingly agreed to excuse one of them from otherwise responsible acts." *Trainor v. Aztalan Cycle Club, Inc.,* 147 Wis. 2d 107, 114, 432 N.W.2d 626, 629-30 (Ct. App. 1988), quoting *Arnold v. Shawano County Agr. Society,*

111 Wis. 2d 203, 213, 330 N.W.2d 773, 779 (1983), *overruled on other grounds, Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 317, 401 N.W.2d 816, 821 (1987). We believe the release signed by Dobratz meets that test. It plainly states that it releases not only Webfooter but also "the promoters, the owners and lessees of the premises, the participants, and the officers, directors, officials, representatives, agents and employees of all of them" from liability "in any way resulting from, or arising in connection with this event." Under such circumstances a contracting party, not otherwise disabled, is bound by law to know and understand the terms of the document he or she signs. *Ritchie v. Clappier,* 109 Wis. 2d 399, 404–05, 326 N.W.2d 131, 134 (Ct. App. 1982).

Brenda Dobratz also challenges the release as contrary to public policy under *Wagenblast v. Odessa Sch. No. 105-157-166J,* 758 P.2d 968, 972–74 (Wash. 1988). In that case, the Washington court stated that the likelihood that an exculpatory agreement would be invalidated on public policy grounds was dependent upon the existence of several factors, specifically: (1) that the agreement concerns an endeavor of a type generally thought suitable for public regulation; (2) that the party seeking exculpation is performing a service of great public importance often amounting to a matter of practical necessity for some members of the public; (3) that the party seeking exculpation holds itself out as willing to perform its services for any member of the public seeking it; (4) that, because of the "essential nature of the service, in the economic setting of the transaction," the party seeking exculpation possesses a decisive advantage of bargaining strength against any member of the public who seeks the services; (5) that no provision is made for the "purchaser" to pay additional reasonable fees for protection against negligence; and (6) that the person or

315

property of members of the public seeking such services must be placed under the control of the furnisher of the services.

We do not consider it necessary to discuss *Wagenblast* in detail, for we do not believe that a local club-sponsored waterski show is either a subject "generally thought suitable for public regulation," or "a service of great importance to the public" as those concepts are discussed in the Washington court's decision. Nor do we think allowing skiers to participate in such a show endows the sponsor with "a decisive advantage of bargaining strength." As for the remaining *Wagenblast* factors, we do not see them as even remotely relevant.

We conclude, therefore, that the agreement signed by Mark Dobratz is not void for reasons of public policy, and we turn to the issues raised on the appeal.

The trial court denied the defendants' motion for summary judgment because it felt there were material facts in dispute. Specifically, the court believed that evidence on how many times the particular act had been rehearsed or practiced before the show was highly relevant and material to the question whether Dobratz could be held to have assumed the risks inherent in the event. Because the court saw a "credibility issue" in the somewhat conflicting evidence on the point, it ruled that summary judgment was inappropriate. Thus, according to the court, there was an issue of fact as to whether the parties, when they signed the release, contemplated the type of accident that subsequently caused Dobratz's death.

In *Arnold*, 111 Wis. 2d at 211, 330 N.W.2d at 778, the court recognized that exculpatory agreements—especially those that contain "very broad and general provisions"—will bar "only those claims that

[were] within the contemplation of the parties when the contract was executed." In *Arnold,* the plaintiff, a race car driver, was injured when, after a collision, rescuers sprayed a toxic fire-retardant chemical onto his car while he was still in it. Given those facts and the general language of the release, the *Arnold* court ruled that there was a question of fact "as to whether the risk of negligent rescue operations was within the contemplation of the parties at the time the exculpatory contract was executed." *Id.* at 212, 330 N.W.2d at 778.

While the exculpatory language of the release signed by Dobratz is also broadly phrased, we do not believe *Arnold* compels a similar result in this case. In *Arnold,* the driver's injury was not directly related to the inherent dangers in race car driving; it had nothing to do with the condition of the course or the car, or the nature of his own or other racers' driving. The claimed negligence had to do with the materials chosen by an ambulance crew to aid in rescue efforts after a collision, and in the manner in which the members of the crew used those materials.

In this case, Dobratz's death is claimed to have been caused by the negligence of participants in the ski show in the performance of their roles in the show. If the driver in *Arnold* had been injured in the race, say in a collision with another car or similar accident, it would have been a different case altogether. It would have been a case like this one, where acts causing the injury occurred while the parties were performing in the very event for which the release was given. Dobratz's release expressly applied to the "event"—the waterski show—and it was in the performance of that "event" that the accident occurred. Unlike the situation in Arnold, we see no factual issue in this case as to whether

the claimed negligence was within the parties' contemplation at the time the release was executed. Rather, we consider this to be a case like *Trainor,* where we held that injuries to a motorcycle racer who fell during prerace practice on an allegedly defective track were within the contemplation of the parties when they signed a prior release covering "all claims" arising from any accident or other occurrence during or in connection with the race or in any way resulting from the race. *Trainor,* 147 Wis. 2d at 117, 432 N.W.2d at 631. We reach the same conclusion here.

Brenda Dobratz also argues that the release should be held unenforceable because it does not make specific reference to anyone's "negligence." We see this as a "magic words" argument. The Wisconsin authority cited for the proposition is the court's statement in *Ruppa v. American States Ins. Co.,* 91 Wis. 2d 628, 637, 284 N.W.2d 318, 321 (1979), that indemnity contracts "will generally not be construed to cover losses caused by the indemnitee's own negligence unless such effect is clearly and unequivocally expressed in the agreement." (Footnote omitted.) We do not see *Ruppa* as in any way laying down a rule that in order for a release such as that used in this case to be valid it must contain the word "negligence."

First, this is not an indemnity contract, it is a release. Second, the document provides that Dobratz agreed to "release, and . . . hold [the defendants] harmless . . . from all liability [and] claims . . . that may accrue from any loss, damage or injury (including death) to my person or property, in any way resulting from, or arising in connection with this event . . . ." It also states: "I know the risk and danger to myself . . . while participating or assisting in this event, so voluntarily and in reliance, upon my own judgment and ability, and I

318

thereby assume all risk for loss, damage or injury (including death) to myself . . .."

The terms of the release are practically identical to those contained in the release we upheld in *Trainor,* 147 Wis. 2d at 110, 432 N.W.2d at 628—including the absence of the word "negligence." We conclude, therefore, that the terms of the agreement signed by Dobratz in this case release the defendants from any and all liability for negligence[1] in connection with their sponsorship of, or participation in, the waterski show.

Brenda Dobratz also contends that, even if the release is enforceable, it cannot bar her claim for loss of consortium, and her wrongful death claim under sec. 895.03, Stats. She also asserts that her claim against the driver of the following boat is one based on reckless conduct, which cannot be released by contract.

Wisconsin law recognizes a spouse's separate cause of action for loss of consortium. The term involves a wide range of elements such as love, companionship, affection, society, sexual relations and the right of support of the performance of marital services. *Kottka v. PPG Industries,* 130 Wis. 2d 499, 519, 388 N.W.2d 160, 169 (1986). It is a common-law right and constitutes "a separate cause of action which never belonged to the other spouse." *Arnold,* 111 Wis. 2d at 214, 330 N.W.2d at 779. As such, any release signed by the deceased spouse "cannot bind to release a [surviving] spouse's consortium rights." *Id.* at 215, 330 N.W.2d at 779.[2]

---

[1] As will be seen below, the release is ineffective to release any claims grounded on intentional or reckless conduct, and because recklessness is an issue with respect to the claim against the driver of the following boat, we remand that claim to the trial court for further proceedings.

[2] Because Brenda Dobratz's claim for loss of consortium must

The statutory wrongful death action is quite another thing, however. In *Kottka,* the supreme court was careful to distinguish between a wife's claim for "loss of [her deceased husband's] society and companionship resulting from his death from her claim for loss of consortium between the time of [his] alleged injury and his death." *Kottka,* 130 Wis. 2d at 517, 388 N.W.2d at 168. And while it is said that statutory wrongful death action "belongs to named beneficiaries for their pecuniary loss," *Wangen v. Ford Motor Co.,* 97 Wis. 2d 260, 312, 294 N.W.2d 437, 463 (1980), the court has stated quite plainly that the terms of the statute limit recovery to those situations where the deceased would have been able to recover had he or she survived:

> Under sec. 895.03, Stats., an action for wrongful death is derivative. One is liable to the plaintiff in an action under that statute only if and to the extent that he would have been liable to the decedent had death not ensued. In *Haase v. Employers Mut. Liability Ins. Co.,* 250 Wis. 422, 433, 27 N.W.2d 468[,474] (1947), this court explained the statute as follows:
>
>> "By the use of the words therein 'and the act, neglect or default is such as would, *if death had not ensued,* have entitled the party injured to maintain an action . . . in respect thereof,' the right to recover thereunder is definitely limited to solely cases in which the injured party

reflect her losses between the time of Mark's accident and his death, *Kottka,* 130 Wis. 2d at 517, 388 N.W.2d at 168, it is likely, as cross-respondents suggest, that damages for the few hours Mark lived will be difficult, if not impossible, to prove. We hold only that the cause of action for loss of consortium is not barred by the release.

could have recovered if his death had not ensued." *Ruppa,* 91 Wis. 2d at 646, 284 N.W.2d at 325 (emphasis the *Haase* court's).

Because Mark Dobratz, having released the defendants from all liability, could not have recovered against them for his injuries, it follows that his surviving spouse, Brenda Dobratz, may not maintain the action for wrongful death under sec. 895.03, Stats.

Finally, Brenda Dobratz argues that because the cause of action against Gregory Thomson, the driver of the following boat, involves possible reckless conduct it is not barred by the release. In *Trainor,* we noted that while the supreme court has, on several occasions, "quoted passages from the Restatement [of Contracts] which include the statement that [exculpatory] contracts are invalid to the extent they attempt to excuse intentional or reckless conduct," it has not had the opportunity to apply that rule in a specific case. *Trainor,* 147 Wis. 2d at 115, 423 N.W.2d at 630. And because, in *Trainor,* the defendants' conduct was held to be not reckless as a matter of law, we did not reach the issue in that case either.

Here, however, we cannot make a similar legal ruling on the limited record before us. As a result, we must consider whether, as a matter of law, reckless conduct on Thomson's part, if proved at trial, would survive the release; and we hold that it would.

It seems to us that if the court, as it did in *Merten,* will decline to enforce an exculpatory contract containing a material misrepresentation of fact for reasons of public policy, it would similarly fail to uphold a contract purporting to release a party from responsibility for his or her intentional or reckless acts. Indeed, the *Merten* court began its discussion by quoting in detail from the Restatement rule—including the provision declaring

unenforceable any contract "exempting a party from tort liability for harm caused intentionally or recklessly"—and declaring the rule to be a nonexhaustive "list of situations in which exculpatory contracts are unenforceable on the grounds of public policy." *Merten,* 108 Wis. 2d at 212-13, 321 N.W.2d at 177-78, quoting *Restatement (Second) of Contracts,* sec. 195 (1979).

*Merten,* the Restatement rule, and the line of Wisconsin contract cases applying a similar principle in holding disclaimers of liability ineffective against claims of fraudulent representation,[3] lead us to conclude that an exculpatory contract, even though otherwise valid, cannot operate to relieve a party from the consequences of intentional or reckless conduct. Such a rule is grounded in what we believe to be sound public policy for, as noted in the Restatement, the law of torts imposes standards of conduct for the protection of others against unreasonable risk of harm, and one should not be able to exempt himself or herself from liability for harm that is caused either intentionally or recklessly. *Restatement (Second) of Contracts,* sec. 195 comment a (1981). It is also the rule in what appears to be a majority of jurisdictions.[4]

---

[3]*See e.g. Anderson v. Tri-State Home Improvement Co.,* 268 Wis. 2d 455, 67 N.W.2d 853 (1955); *Morse Chain Co. v. T.W. Meiklejohn, Inc.,* 237 Wis. 383, 296 N.W. 106 (1941); *Malas v. Lounsbury,* 193 Wis. 531, 214 N.W. 332 (1927). *Accord RepublicBank Dallas v. First Wis. Nat. Bank,* 636 F. Supp. 1470, 1473 (E.D. Wis. 1986) (applying Wisconsin law).

[4]*See, e.g., Jones v. Dressel,* 623 P.2d 370, 376 (Colo. 1981); *Fuentes v. Owen,* 310 So. 2d 458, 460 (Fla. Dist. Ct. App. 1975); *Davis v. Commonwealth Edison Co.,* 336 N.E.2d 881, 885 (Ill. 1975); *Winterstein v. Wilcom,* 293 A.2d 821, 824-25 (Md. Ct. Spec. App. 1972); *Hawes v. Central of Georgia Railway Company,* 162 S.E.2d 14, 15 (Ga. Ct. App. 1968); *Shelby Mutual Insurance*

Negligence is rarely determinable on motions for summary judgment. This is particularly true in a case such as this where determining what happened at and just before a collision is dependent upon an assessment of the instantaneous observations and impressions of several eyewitnesses. There are, for example, disputes as to Dobratz's actions after falling into the water, and as to whether Gregg Thomson may have observed, or should have observed, floating skis in the water ahead of the boat and other evidence of Dobratz's presence just prior to the collision. And while the complaint describes Thomson's culpability only in terms of "negligence," there are undisputed facts indicating that he was aware that skiers from the first boat had fallen and were in the water ahead, and that prior to striking Dobratz he was looking to the rear, rather than to the front, of his moving boat.

On this record, then, we believe that whether Thomson's actions might be considered reckless conduct is a question of fact for trial. And because the release

*Co. v. City of Grand Rapids,* 148 N.W.2d 260, 262 (Mich. Ct. App. 1967); *Fena v. Wickstrom,* 348 N.W.2d 389, 390 (Minn. Ct. App. 1984); *Liberty Fin. Mgmt. v. Beneficial Data,* 670 S.W.2d 40, 48 (Mo. Ct. App. 1984); *Gross v. Sweet,* 400 N.E.2d 306, 308 (N.Y. 1979); *Adams v. Roark,* 686 S.W.2d 73, 75 (Tenn. 1985); *Smith v. Golden Triangle Raceway,* 708 S.W.2d 574, 576 (Tex. Ct. App. 1986); *Douglas W. Randall, Inc. v. AFA Protective Systems,* 516 F. Supp. 1122, 1127 (E.D. Pa. 1981), *aff'd without op,* 688 F.2d 820 (3rd Cir. 1982).

*See also* 6A A. Corbin, *Corbin on Contracts,* sec. 1472, pp. 596-97 (1962) ("an exemption [from liability] is always invalid if it applies to harm willfully inflicted or caused by gross or wanton negligence") (footnotes omitted).

signed by Dobratz would not protect Thomson from liability for reckless conduct, we reverse on that issue and remand for further proceedings with respect to the claim against him, and also with respect to Brenda Dobratz's claim for loss of consortium. In all other respects, we affirm the order.

*By the Court.*—Order affirmed in part, reversed in part and cause remanded for further proceedings consistent with this opinion.