MORAN, Plaintiff, and wife, Plaintiff and Appellant, v. QUALITY ALUMINUM CASTING COMPANY, Defendant and Respondent: WISCONSIN ELECTRIC POWER COMPANY, Defendant.

*February 27—April 28, 1967.*

---

[10] *Badger v. Janesville Cotton Mills* (1897), 95 Wis. 599, 601, 70 N. W. 687.

For the appellant there was a brief by *Schneider & Tammi* of Milwaukee, and oral argument by *Walter M. Tammi.*

For the respondent there was a brief by *Hippenmeyer, Reilly, Fritz & Arenz* of Waukesha, and oral argument by *Richard S. Hippenmeyer.*

A brief *amicus curiae* was filed by *Prosser, Zimmermann & Wiedabach* of Milwaukee, for the Wisconsin Electric Power Company.

CURRIE, C. J. The sole issue presented by this appeal is whether a wife has a cause of action for loss of the consortium of her husband who has been injured by the negligent acts of a third person.

Twelve years ago this court in *Nickel v. Hardware Mut. Casualty Co.*[1] held that a married woman did not possess such right of action at common law and that it had not been conferred by statute. Thus the crucial question is whether that decision should now be overruled.

We will first approach the problem from the standpoint of the common law. Prior to 1950 the common law did not recognize a cause of action on the part of a married woman for loss of the consortium of her husband due to negligent acts of a third party.[2] This was because upon marriage, husband and wife became one, and he was that one. The personal property, money and chattels of the wife became those of her husband. She could neither contract nor bring an action of any kind, for she was a legal nonentity.[3] Blackstone declared:

"By marriage, the husband and wife are one person in law: that is, the very being or legal existence of the woman is suspended during the marriage, or at least is incorporated and consolidated into that of the husband . . . . Upon this principle, of a union of person in husband and wife, depend almost all the legal rights, duties, and disabilities, that either of them acquire by the marriage."[4]

Blackstone also advanced the further reason that the wife, being the inferior, could not sue a wrongdoer for injury to her husband, her superior:

". . . the inferior hath no kind of property in the company, care, or assistance of the superior, as the superior is held to have in those of the inferior; and therefore the inferior can suffer no loss or injury."[5]

---

[1] (1955), 269 Wis. 647, 70 N. W. (2d) 205.

[2] 3 Restatement, Torts, p. 496, sec. 695; Prosser, Law of Torts (3d ed.), pp. 916, 917, sec. 119; Lippman, The Breakdown of Consortium, 30 Columbia Law Review (1930), 651.

[3] 5 Bracton, De Legibus (Twiss ed. 1878), 423; 1 Blackstone, Commentaries *442.

[4] 1 Blackstone, Commentaries *442.

[5] 3 Blackstone, Commentaries pp. *142, *143.

As explained in *Montgomery v. Stephan*,[6] a recent decision by the Michigan supreme court:

"This, then, is the soil in which the doctrine took root; the abject subservience of wife to husband, her legal nonexistence, her degraded position as a combination vessel, chattel, and household drudge whose obedience might be enforced by personal chastisement."

Obviously the historical milieu in which the doctrine originated has changed completely. Nevertheless, despite obvious changes in the social, economic and legal status of women, the common-law doctrine allowing the husband a right of action for loss of consortium, but denying the wife a reciprocal action, was uniformly adhered to by the courts until 1950.[7]

The circuit court of appeals for the District of Columbia in 1950 made a sharp break with these past decisions in *Hitaffer v. Argonne Co.*[8] and held that a wife has a cause of action for loss of consortium due to an injury negligently inflicted upon her husband. In so holding, the court stated:

". . . we remain unconvinced that the rule which [has been] laid down should be followed in the District of Columbia. On the contrary, after piercing the thin veils of reasoning employed to sustain the rule [denying the wife recovery], we have been unable to disclose any substantial rationale on which we would be willing to predi-

---

[6] (1960), 359 Mich. 33, 40, 101 N. W. (2d) 227.

[7] See the exhaustive list of decisions cited in *Hitaffer v. Argonne Co.* (D. C. Cir. 1950), 183 Fed. (2d) 811, at pages 812, 813.

[8] *Supra*, footnote 7. In *Smither & Co. Inc., v. Coles* (D. C. Cir. 1957), 242 Fed. (2d) 220, certiorari denied, 354 U. S. 914, 77 Sup. Ct. 1299, 1 L. Ed. (2d) 1429, the District of Columbia circuit court *overruled Hitaffer* inasmuch as it related to the scope of exclusive liability provisions in the District of Columbia Workmen's Compensation Act, D. C. Code 1961, sec. 36–501, *et seq.* However, it approved of the holding in *Hitaffer* that a wife has a protected right to maintain an action for loss of consortium.

cate a denial of a wife's action for loss of *consortium* due to a negligent injury to her husband." [9]

It then quoted with approval the following from an 1889 New York case [10] in which a wife had sued for the intentional enticing away of her husband which she alleged deprived her of his "comfort, aid, protection and society:"

"The actual injury to the wife from loss of *consortium*, which is the basis of the action, is the same as the actual injury to the husband from that cause. His right to the conjugal society of his wife is no greater than her right to the conjugal society of her husband. Marriage gives each the same rights in that regard. Each is entitled to the comfort, companionship, and affection of the other. The rights of the one and the obligations of the other spring from the marriage contract, are mutual in character, and attach to the husband as husband, and to the wife as wife. Any interference with these rights, whether of the husband or of the wife, is a violation, not only of natural right, but also of a legal right arising out of the marriage relation. . . . As the wrongs of the wife are the same in principle and are caused by acts of the same nature as those of the husband, the remedy should be the same." [11]

At the time this court was called upon to decide *Nickel v. Hardware Mut. Casualty Co.* [12] the *Hitaffer Case* stood almost alone, [13] and its holding had been rejected by a number of other courts faced with the identical issue. [14]

---

[9] Id. at page 813.

[10] *Bennett v. Bennett* (1889), 116 N. Y. 584, 23 N. E. 17, 6 L. R. A. 553.

[11] Id. at page 590.

[12] *Supra*, footnote 1.

[13] Apparently the only other case to have followed it prior to *Nickel* is *Brown v. Georgia-Tennessee Coaches* (1953), 88 Ga. App. 519, 77 S. E. (2d) 24.

[14] *Seymour v. Union News Co.* (7th Cir. 1954), 217 Fed. (2d) 168; *Filice v. United States* (9th Cir. 1954), 217 Fed. (2d) 515; *Jeune v. Del E. Webb Construction Co.* (1954), 77 Ariz. 226, 269 Pac. (2d) 723; *Franzen v. Zimmerman* (1953), 127 Colo. 381, 256

Since *Nickel* a very respectable group of jurisdictions have broken from the ranks of those denying recovery under the common-law rule and have held the wife's right to the loss of consortium to be one cognizable at law,[15] while others still adhere to the old rule.[16] Com-

Pac. (2d) 897; *Ripley v. Ewell* (Fla. 1952), 61 So. (2d) 420; *Burk v. Anderson* (1952), 232 Ind. 77, 109 N. E. (2d) 407; *La Eace v. Cincinnati, N. & C. R. Co.* (Ky. 1952), 249 S. W. (2d) 534; *Nelson v. A. M. Lockett & Co.* (Okla. 1952), 243 Pac. (2d) 719; *Ash v. S. S. Mullen, Inc.* (1953), 43 Wash. (2d) 345, 261 Pac. (2d) 118.

[15] See *Missouri-Pacific Transportation Co. v. Miller* (1957), 227 Ark. 351, 299 S. W. (2d) 41; *Yonner v. Adams* (1961), 53 Del. 229, 167 Atl. (2d) 717; *Dini v. Naiditch* (1960), 20 Ill. (2d) 406, 170 N. E. (2d) 881 [extremely good discussion of issue]; *Lampe v. Lagomarcino-Grupe Co.* (1959), 251 Iowa 204, 100 N. W. (2d) 1; *Acuff v. Schmit* (1956), 248 Iowa 272, 78 N. W. (2d) 480; *Montgomery v. Stephan* (1960), 359 Mich. 33, 101 N. W. (2d) 227; *Owen v. Illinois Baking Corp.* (D. C. Mich. 1966), 260 Fed. Supp. 820; *Novak v. Kansas City Transit, Inc.* (Mo. 1963), 365 S. W. (2d) 539; *Shepherd v. Consumers Cooperative Asso.* (Mo. 1964), 384 S. W. (2d) 635 [reaffirmed *Novak, supra,* after being requested to reconsider the holding]; *Duffy v. Lipsman-Fulkerson & Co.* (D. C. Mont. 1961), 200 Fed. Supp. 71 [applied Montana law]; *Guyton v. Solomon Dehydrating Co.* (8th Cir. 1962), 302 Fed. (2d) 283 [indicated that Nebraska would allow recovery but recognized absence of controlling Nebraska decision]; *Ekalo v. Constructive Service Corp. of America* (1965), 46 N. J. 82, 215 Atl. (2d) 1; *Ellis v. Fallert* (1957), 209 Or. 406, 307 Pac. (2d) 283 [based on statute, dictum]; *Hoekstra v. Helgeland* (1959), 78 S. D. 82, 98 N. W. (2d) 669.

[16] *Smith v. United Construction Workers* (Ala. 1960), 122 So. (2d) 153; *Deshotel v. Atchison, T. & S. F. R. Co.* (1958), 50 Cal. (2d) 664, 328 Pac. (2d) 449; *Lockwood v. Wilson H. Lee Co.* (1956), 144 Conn. 155, 128 Atl. (2d) 330; *Coastal Tank Lines, Inc., v. Canoles* (1955), 207 Md. 37, 113 Atl. (2d) 82; *State Farm Mut. Auto Ins. Co. v. Village of Isle* (1963), 265 Minn. 360, 122 N. W. (2d) 36; *Nash v. Mobile & O. R. Co.* (1928), 149 Miss. 823, 116 So. (2d) 100; *Snodgrass v. Cherry-Burrell Corp.* (N. H. 1960), 164 Atl. (2d) 579; *Roseberry v. Starkovich* (1963), 73 N. M. 211, 387 Pac. (2d) 321; *Kronenbitter v. Washburn Wire Co.* (1958), 4 N. Y. (2d) 524, 176 N. Y. Supp. (2d) 354, 151 N. E. (2d) 898; *Neuberg v. Bobowicz* (1960), 401 Pa. 146, 162 Atl. (2d) 662; *Page v.*

ments in texts and law reviews almost unanimously have favored recovery by the wife.[17] Prosser, in commenting on the decisions which have denied a cause of action to the wife for loss of consortium in actions grounded on negligence states:

"There has been almost universal condemnation of such a result on the part of legal writers. Obviously it can have no other justification than that of history, or the fear of an undue extension of liability of the defendant, or a double recovery by wife and husband for the same damages. The loss of 'services' is an outworn fiction, and the wife's interest in the undisturbed relation with her consort is no less worthy of protection than that of the husband. Nor is any valid reason apparent for allowing her recovery for a direct interference by alienation of affections, and denying it for more indirect harm through personal injury to the husband, where no such distinction is made in his action. . . .

"Around 1958 something of a current of support for the Hitaffer case set in, and since that date the trend has been definitely in the direction of approval. It now

---

*Winter* (1962), 240 S. C. 516, 126 N. E. (2d) 570; *Krohn v. Richardson-Merrell, Inc.* (Tenn. 1966), 406 S. W. (2d) 166 (certiorari denied, March 20, 1967, 386 U. S. 970, 87 Sup. Ct. 1160, 18 L. Ed. (2d) 129; *Garrett v. Reno Oil Co.* (Tex. Civ. App. 1954), 271 S. W. (2d) 764; *Seagraves v. Legg* (W. Va. 1962), 127 S. E. (2d) 605.

[17] 1 Harper and James, Law of Torts, p. 635, sec. 8.9; Prosser, Law of Torts (3d ed.), p. 916, sec. 119; Fridman, Consortium as an "Interest" in the Law of Torts, 32 Canadian Bar Review (1954), 1065; Holbrook, The Change in the Meaning of Consortium, 22 Michigan Law Review (1923), 1; Lippman, The Breakdown of Consortium, 30 Columbia Law Review (1930), 651; Simeone, The Wife's Action for Loss of Consortium—Progress or No? 4 St. Louis University Law Journal (1957), 424; Notes, 9 Indiana Law Journal (1933), 182; 29 North Carolina Law Review (1951), 178; 20 Fordham Law Review (1951), 342; Georgetown Law Journal (1953), 443; 39 Cornell Law Quarterly (1954), 761; 14 Washington & Lee Law Review (1957), 324; 31 Temple Law Quarterly (1958), 284; 13 University of Miami Law Review (1958), 92; 20 Louisiana Law Review (1960), 731; 50 Kentucky Law Journal (1961), 263. Contra, Thurman, Recovery by Wife for Loss of Consortium of Husband, 24 Insurance Counsel Journal (1957), 224.

stands accepted, and the wife is allowed her action in Arkansas, Delaware, the District of Columbia, Georgia, Illinois, Iowa, Michigan, Missouri, Montana, Nebraska, Oregon, and South Dakota. Since a considerable number of the courts which have rejected the change have approved it in principle, but have said that it should be for the legislature to make, the prediction is probably justified that the trend will continue, and that public opinion as to the equality of the sexes will have its effect in persuading the courts." [18]

A recent federal case [19] has grounded its holding that a wife has a cause of action for loss of consortium on the equal protection of the laws clause of the Fourteenth amendment. In its opinion the court stated:

"However the right is characterized, it arises from the marital relation, and to say that is inheres in the husband but not the wife is to indulge in what the Hitaffer court termed 'legal gymnastics.' And to grant a husband the right to sue on this right while denying the wife access to the courts in the assertion of this same right is too clearly a violation of Fourteenth Amendment equal protection guarantees to require citation of authority." [20]

Both logic and the interest of justice require that, if a husband is to be accorded the right to recover for loss of consortium of the wife injured through the negligent act of another, a wife also should be accorded the same right where she sustains a loss of consortium of the husband. The genius of the common law is its ability to adapt itself to the changing needs of society. Because the bases on which the old common-law rule which denied to the wife the right of recovery for loss of her husband's consortium rest on historical concepts which long ago disappeared, we deem the rule of *Nickel v. Hardware*

[18] Prosser, Law of Torts (3d ed.), p. 917, *et seq.*, sec. 119.

[19] *Owen v. Illinois Banking Corp. supra*, footnote 15.

[20] Id. at page 821. In accord *Clem v. Brown* (1965), 3 Ohio Misc. 167, 207 N. E. (2d) 398. Contra *Krohn v. Richardson-Merrell, Inc.* (Tenn. 1966), 406 S. W. (2d) 166 (certiorari denied, March 20, 1967, 386 U. S. 970, 87 Sup. Ct. 1160, 18 L. Ed. (2d) 129).

*Mut. Casualty Co.* should be overruled unless we are prevented from so doing by that portion of the decision which rests upon statutory interpretation.

The two statutes construed in *Nickel* were secs. 6.015 and 246.07, Stats. 1953, which provided as follows:

"6.015 **Women to have equal rights.** (1) Women shall have the same rights and privileges under the law as men in the exercise of suffrage, freedom of contract, choice of residence for voting purposes, jury service, holding office, holding and conveying property, care and custody of children, *and in all other respects. . . .*" (Italics supplied.)

"246.07 **May sue in her own name.** Every married woman may sue in her own name and shall have all the remedies of an unmarried woman in regard to her separate property or business and to recover the earnings secured to her by sections 246.05 and 246.06, and shall be liable to be sued in respect to her separate property or business, and judgment may be rendered against her and be enforced against her and her separate property in all respects as if she were unmarried. And any married woman may bring and maintain an action in her own name for any injury to her person or character the same as if she were sole. She may also bring and maintain an action in her own name, and for her own benefit, for the alienation and the loss of the affection and society of her husband. Any judgment recovered in any such action shall be the separate property and estate of such married woman. Nothing herein contained shall affect the right of the husband to maintain a separate action for any such injuries as are now provided by law."

The gist of the court's construction of these two statutes in *Nickel* was this: The enumeration in sec. 246.07, Stats., of the actions which a married woman may maintain implies the exclusion of others such as one for loss of consortium. It is a special statute while sec. 6.015 is a general statute, and thus in case of conflict sec. 6.015 must yield to sec. 246.07 even though sec. 6.015 was enacted after sec. 246.07. Also, while not controlling, the fact that sec. 6.015 appears in the chapter of the statute

entitled, "Electors and General Elections," suggests the possibility that the legislature by its enactment intended to grant to married women equal political rights only while sec. 246.07 was intended to extend their property rights.

In retrospect the salient error in this chain of reasoning is the holding that the two statutes are in conflict with each other so as to make applicable the rule that a specific statute controls over a general statute. It is a cardinal rule of statutory construction that conflicts between different statutes, by implication or otherwise, are not favored and will not be held to exist if they may otherwise be reasonably construed.[21] There is no express provision in sec. 246.07, Stats., excluding actions for loss of consortium. The court in *Nickel* resorted to implication to find such exclusion. Without resort to implication there is no conflict in secs. 6.015 and 246.07, if the words *and in all other respects* of the former are applicable to actions. Sec. 6.015, if applicable, merely has the effect of adding to the types of action enumerated in sec. 246.07. There is no express prohibition against this contained in sec. 246.07, and none should be imported by resort to implication.

As noted above, the court in *Nickel* stated that the placing by the legislature of sec. 6.015, Stats., in the chapter of the statutes relating to elections suggested the possibility that sec. 6.015 was only intended to grant married women equal political rights as distinguished from property rights. This possible interpretation has been negated by the action of the legislature in enacting ch. 666, Laws of 1965. Sec. 1 of ch. 666 repealed all of chs. 5 to 10, and sec. 20 thereof re-created sec. 6.015 as new sec. 246.15. The minutes of the committee which

---

[21] *State ex rel. McManman v. Thomas* (1912), 150 Wis. 190, 196, 136 N. W. 623. See also *Wisconsin Valley Improvement Co. v. Public Service Comm.* (1960), 9 Wis. (2d) 606, 615, 101 N. W. (2d) 798; *Brunette v. Bierke* (1955), 271 Wis. 190, 196, 72 N. W. (2d) 702; 50 Am. Jur., Statutes, p. 367, sec. 363.

undertook study of the Election Code indicate that such action was taken because sec. 6.015 had very little to do with elections and dealt primarily with the rights of women. Although ch. 666, Laws of 1965, is not to take effect until July 1, 1967, it clearly evinces a legislative intent that sec. 6.015 does extend to property rights of married women.

Moreover, the court's opinion in *Nickel* failed to set forth three prior holdings of the court in which it was determined that sec. 6.015, Stats., was intended to confer rights upon married women beyond those having to do with the extension of suffrage.

The first of these prior decisions was *First Wisconsin Nat. Bank v. Jahn.*[22] Sec. 6.015, Stats., had been enacted by the 1921 legislature effective July 15, 1921,[23] and the note upon which suit was brought against defendant wife as an accommodation maker was dated December 19, 1921. Under prior decisions of this court without sec. 6.015 defendant would not have been liable. Defendant argued that sec. 6.015 was intended primarily to secure to women equal political and civil rights and did not embrace contract rights. The court rejected such argument and held that the statute meant exactly what it said and that under it women shall be as free as men to make personal contracts.

Another such prior decision was *Wait v. Pierce* [24] in which the court, in considering the effect of sec. 6.015, Stats., on the right of a married woman to sue her husband for negligence, stated:

"It was not necessary [for sec. 6.015] to refer to freedom of contract, holding and conveying property, care and custody of children in order to carry the suf-

[22] (1922), 179 Wis. 117, 190 N. W. 822.
[23] Ch. 529, Laws of 1921.
[24] (1926), 191 Wis. 202, 209 N. W. 475, 210 N. W. 822. This case was cited in *Nickel* for a principle other than the one here being considered.

frage amendment into effect. This language related only to married women. The *feme sole* has always had freedom of contract, right to hold and convey property, and she certainly was not concerned with the care and custody of children. It seems too clear for argument that sec. 6.015 further modified the rights of husband and wife as they existed at common law and that it was designed to place them on a basis of equality before the law not only in the particulars mentioned but *'in all other respects.'* " (Emphasis supplied.) [25]

A further case decided by this court which accorded sec. 6.015, Stats., a wider scope than given it in *Nickel* is *Estate of Cortte*.[26] The point at issue was whether a postnuptial contract between husband and wife was valid, inasmuch as such a contract had been held to be invalid prior to the enactment of sec. 6.015. The court in its opinion declared:

"This statute provides that 'women shall have the same rights and privileges under the law as men' in several specified respects including 'freedom of contract,' 'holding and conveying property,' and almost everything else conceivable, 'and in all other respects.' . . .

"The statute puts husband and wife on a basis of complete equality before the law in every respect. *Wait v. Pierce,* 191 Wis. 202, 209 N. W. 475, 210 N. W. 822." [27]

We thus conclude that, if the matter were before us as an original proposition, we would be compelled to hold that the language of sec. 6.015, Stats., "Women shall have the same rights and privileges as men . . . in all other respects" embraces the right to prosecute the same causes of action that men possess. This would include a cause of action for loss of consortium. The problem which has caused us no little concern is whether the construction placed upon the interrelationship of secs.

[25] Id. at page 210.

[26] (1939), 230 Wis. 103, 283 N. W. 336.

[27] Id. at pages 105, 106.

246.07 and 6.015 in *Nickel* precludes us from now determining that sec. 6.015 does expand the causes of action a married woman may maintain beyond those originally enumerated in sec. 246.07.

This court over the years has repeatedly held that a construction given to a statute by the court becomes part of the statute unless the legislature subsequently amends the statute to effect a change.[28] However, here we are not so much concerned with the prior interpretation of a single statute as with the interplay of two statutes.

We consider that we are bound by the interpretation placed on sec. 246.07, Stats., by *Nickel, i.e.,* the enumeration of specific causes of actions maintainable by a married woman excludes a cause of action not enumerated. *Nickel* does not expressly hold that the words "in all other respects" of sec. 6.015 do not apply to causes of action, but only suggests that this may be so because of the placement of that statute in the chapter dealing with elections. As we have seen, such a suggested interpretation is not only at odds with three earlier decisions of this court, but has been rejected by the legislature in directing that sec. 6.015 be placed in ch. 246 entitled, "Property Rights of Married Women."

Thus the only remaining hurdle to be surmounted is the erroneous determination in *Nickel* that secs. 246.07 and 6.015, Stats., are in conflict. We do not deem that this is governed by the rule that once this court construes a statute such construction becomes a part of the statute which only the legislature is free to change. Accordingly, we overrule the holding in *Nickel* that the two statutes are in conflict, and determine that sec. 6.015 expands the types of action maintainable by a married woman beyond

[28] *Borello v. Industrial Comm.* (1965), 26 Wis. (2d) 62, 71, 131 N. W. (2d) 847; *Estate of Atkinson* (1963), 19 Wis. (2d) 272, 278, 120 N. W. (2d) 109; *Meyer v. Industrial Comm.* (1961), 13 Wis. (2d) 377, 382, 108 N. W. (2d) 556; *Thomas v. Industrial Comm.* (1943), 243 Wis. 231, 240, 10 N. W. (2d) 206.

those enumerated in sec. 246.07 so as to permit her to maintain the instant action among others.

The most persuasive argument which has been advanced against permitting a married woman to sue a negligent tort-feasor for loss of consortium is that it would permit a double recovery. This argument was effectively stated in *Nickel* as follows:

"Various reasons have been given by the courts for their rejection of claims of this nature. To us the most appealing is that to permit it would result in double recovery to the husband and wife for the same injury. In the husband's action he is entitled to recover full compensation for all injuries he sustained, including that for being incapacitated, for his inability to care for, protect, and associate with his wife. If she were authorized to recover from the same wrongdoer, the damages she has sustained for the same injuries which her husband may recover for and out of which recovery he is presumed to support and care for her, their recovery would be double, which in our opinion the legislature never intended." [29]

This argument emphasizes but one element of consortium—the loss of support or services. The concept of consortium, however, embraces love, companionship, affection, society, sexual relations, services, solace and more.[30] In the recent decision of *Ballard v. Lumbermens Mut. Casualty Co.*,[31] this court quoted with approval from Schreiber, Damages in Personal Injury and Wrongful Death Cases (PLI, 1965), at page 359, to the effect that "The concept of consortium . . . includes the society, affection, and sexual companionship of the spouse, and the right to performance of material services." Services, it was held, are but one element of consortium.[32]

---

[29] *Supra,* footnote 1, at page 652.

[30] *Montgomery v. Stephan* (1960), 359 Mich. 33, 36, 101 N. W. (2d) 227.

[31] (1967), 33 Wis. (2d) 601, 613, 148 N. W. (2d) 65.

[32] See also Prosser, Law of Torts (3d ed.), pp. 895, 896, sec. 118, and *Hitaffer v. Argonne Co., supra,* footnote 7.

The Illinois supreme court in *Dini v. Naiditch* [33] disposed of the double recovery argument in the following manner:

"Any conceivable double recovery . . . can be obviated by deducting from the computation of damages in the consortium action any compensation given her husband in his action for the impairment of his ability to support. (*Hitaffer v. Argonne Co.*, at p. 815.) Hence, since the possibility of double recovery can be eliminated by this simple adjustment of damages, it should not constitute a basis for denying her action, *which includes many elements which are in no way compensable in the husband's action.*" (Emphasis supplied.)

The area where double recovery might occur is confined to impairment of the husband's earning capacity which would reflect itself in the wife's damages for loss of support. This double recovery can be obviated by imposing as a condition to permitting a wife the right to maintain an action for loss of consortium against a negligent tort-feasor the requirement that her cause of action be joined with that of her husband for his injuries. By so requiring the possibility of double recovery can be guarded against by the form of special verdict and the accompanying instructions to the jury in cases tried to a jury. If tried to the court instead of a jury, the court's findings of damages should be such as to avoid any duplication.

In summary, this court concludes that a wife may maintain an action for loss of consortium of her husband against a negligent tort-feasor provided, and on condition, that her cause of action is combined with that of her husband for his personal injuries. In the instant case the plaintiff wife's cause of action is joined with that of her husband for his injuries.

---

[33] (1960), 20 Ill. (2d) 406, 427, 170 N. E. (2d) 881.

*By the Court.*—Order reversed, and cause remanded for further proceedings.

HANSEN, J., took no part.