Christine GARVEY, Plaintiff-Appellant,

v.

Robert W. BUHLER, individually, and as an
officer, agent or employee of Open Pantry
Food Marts of Wis., Inc., a domestic
corporation, Defendants-Respondents.†

Court of Appeals

*No. 87–2044. Submitted on briefs August 25, 1988.—Decided
August 31, 1988.*

(Also reported in 430 N.W.2d 616.)

† Petition to review denied.

On behalf of the plaintiff-appellant the cause was submitted on the briefs of *Steven M. Lucareli,* of Racine.

On behalf of the defendant-respondent the cause was submitted on the brief of *Constantine, Christensen, Krohn & Kerscher, S.C.,* of Racine.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

NETTESHEIM, J. Christine Garvey's causes of action against her former employer, Open Pantry Food Marts of Wisconsin, Inc. (Open Pantry), for wrongful discharge and intentional infliction of emotional distress were dismissed by the trial court for failure to state a claim. Garvey's breach of contract claim against Open Pantry was also dismissed on summary judgment. Garvey appeals. We conclude that Garvey has failed to state a cause of action for either wrongful discharge or intentional infliction of emotional distress. Therefore, we affirm the trial court's dismissal of these claims. However, we conclude that summary judgment as to the breach of contract claim was improvidently granted, as genuine issues of material fact remain in dispute. Therefore, we reverse the trial court's grant of summary judgment and remand Garvey's breach of contract claim for further proceedings.

Garvey was fired from her position as manager of an Open Pantry store on June 2, 1986. The evening before her termination, Robert Buhler, president of Open Pantry, made a purchase at the store Garvey managed and became upset when the clerk on duty failed to offer him stamps that were being used in a promotion. Garvey was not present in the store that evening, but was responsible for the training and supervision of all the clerks at that store. When

Garvey arrived at work the next morning she was told that both she and the clerk were fired. Her supervisor told Garvey that she was being fired to make an example of her to other store managers.

Garvey first began working as a clerk for Open Pantry in February of 1978. By the date of her termination she had been promoted to store manager. The summary judgment record shows that during her tenure with Open Pantry, Garvey signed a form which outlined the company's alcohol sale policy and contained the statement that conviction under any alcohol sale law would result in termination of employment. Additionally, there existed a company polygraph policy, a standard of conduct form and two company manuals.

Garvey's affidavit stated that her supervisors had communicated to her that there was a company policy whereby an employee would be terminated after the receipt of three pink disciplinary slips within a six-month period and that she had come to rely on this policy as a condition of her employment. Affidavits of two of her past supervisors corroborate this. However, an affidavit of Grover Stock, vice president and secretary of Open Pantry, states that this was not an official company policy anytime during Garvey's employment with the company.

Following her termination, Garvey filed suit against both Robert Buhler, individually, and Open Pantry. An amended complaint was later filed, alleging (1) breach of contract; (2) wrongful termination; (3) intentional infliction of emotional distress; and (4) conspiracy in violation of sec. 134.01, Stats., or, in the alternative, defamation. The parties then stipulated to dismissal of the breach of contract claim against Buhler as an individual, and the trial court ruled that

it would dismiss the conspiracy/defamation allegation against both Buhler and Open Pantry unless Garvey amended her complaint within twenty days. Garvey failed to further amend her complaint within the time limit and the trial court dismissed the conspiracy/defamation claim in its entirety.

Open Pantry then moved for summary judgment on Garvey's breach of contract claim and both Buhler and Open Pantry moved for dismissal of the emotional distress and wrongful termination claims on the ground that a claim for relief was not stated. The trial court granted these motions. Garvey appeals the order.

In support of her breach of contract claim, Garvey contends that her understanding of the pink slip policy, the alcohol policy form she signed, a list of employee rules, an owner/operator manual and an interviewing and hiring manual served to convert the employment at will relationship into one that could only be terminated for cause. *See Ferraro v. Koelsch,* 124 Wis. 2d 154, 157–58, 368 N.W.2d 666, 668 (1985). In *Ferraro,* the Wisconsin Supreme Court held that an express contract was created when the employee indicated his acceptance of an employee handbook that set up the conditions of employment and which promised that discharge would only be for "just cause." *Id.* at 165, 368 N.W.2d at 672. This contract, the supreme court held, abrogated the employment at will relationship. *Id.*

Garvey apparently concedes that the facts of this case do not create an express contract like the one found in *Ferraro.* However, she argues that the company policies did create an implied contract and that under *Ferraro* an implied contract also serves to convert an employment at will relationship into one

that can only be terminated according to the terms of the contract.

We originally certified to the supreme court the question of whether the holding of *Ferraro* embraces implied as well as express contracts. The certification was rejected. Thus, we are called upon to answer this further and open question. Although the *Ferraro* decision is not all encompassing, we conclude that its logic travels to all types of contracts, including implied ones. "The basic question is not one of policy, but of law, mandated by the United States Constitution—will an express contract be enforced? To ask the question is to answer it." *Id.* at 166, 368 N.W.2d at 672. Similarly, to ask whether an implied contract will be enforced begs the question. The ultimate rule of *Ferraro,* we conclude, is that contracts—regardless of their ilk—will be enforced in Wisconsin. Therefore, we will consider Garvey's claim in this light.

On appeal, Garvey contends that the trial court's grant of summary judgment was inappropriate. In support, she extensively argues the law of unilateral contracts, an approach which we do not find particularly helpful. Moreover, Garvey fails to enlighten this court as to the precise nature of the factual dispute, although she does correctly state that the question of whether an implied contract exists is a question of fact. *See Theuerkauf v. Sutton,* 102 Wis. 2d 176, 183, 306 N.W.2d 651, 657 (1981). We agree with Garvey that an issue of fact does exist which renders the trial court's summary judgment order inappropriate.

In reviewing the trial court's grant of a motion for summary judgment, we must independently apply the standards of sec. 802.08(2), Stats., in the same manner

as did the trial court. *Schaller v. Marine Nat'l Bank,* 131 Wis. 2d 389, 394, 388 N.W.2d 645, 648 (Ct. App. 1986). We will reverse only if the record shows that material facts are in dispute or if the trial court incorrectly applied the law. *Id.*

The summary judgment methodology applied by the trial court, and likewise applied by this court, first requires an examination of the pleadings to determine whether the plaintiff has stated a claim upon which relief can be granted. *Henning v. General Motors Assembly Div.,* 143 Wis. 2d 1, 6, 419 N.W.2d 551, 552 (1988). If a claim for relief has been stated, we must then determine whether there exists any dispute as to the material facts. *Id.* If no factual issue exists, then we must decide whether, as a matter of law, the moving party is entitled to summary judgment. *Id.*

Both parties concede, and we agree, that Garvey has stated a valid breach of contract claim. This brings us to the second step of the summary judgment analysis and a determination of whether there exists a genuine issue of material fact. *Id.* This court must examine the affidavits and other proof in order to make this determination. *Grams v. Boss,* 97 Wis. 2d 332, 338, 294 N.W.2d 473, 476–77 (1980). The pleadings themselves do not provide evidentiary facts. *In re Cherokee Park Plat,* 113 Wis. 2d 112, 119, 334 N.W.2d 580, 584 (Ct. App. 1983).

Most of the material facts are undisputed. The record reveals that Garvey was aware of the possibility of termination for violation of an alcohol sale law, as evidenced by her signature on the policy form. However, this case does not concern any violation of

this policy. It is therefore irrelevant to the issue before us. The record is equally clear that Open Pantry had a polygraph policy, an owner/operator manual, and an interviewing and hiring manual. However, there is no evidence that Garvey relied on these policies or that she was even aware of them during the term of her employment. Both implied and express contracts require the element of mutual meeting of the minds and of intention to contract. *Theuerkauf,* 102 Wis. 2d at 183, 306 N.W.2d at 657. The record is not in dispute on this question. No meeting of the minds or intention to contract on these terms is demonstrated.

In addition, the record reveals a twenty-one question standard of conduct form. Although the record is unclear, we assume arguendo that Garvey signed this form and that it became a condition of her employment. However, this form governs conduct pertaining to Garvey's original position as an Open Pantry clerk, not to the supervisory position from which she was fired. Therefore, the policies set forth in this form do not bear upon Garvey's present grievances.

■

However, the record does show that there is one material factual dispute. The affidavits from Garvey and her two supervisors state that Open Pantry had a company policy that an employee would be fired upon receipt of three pink slips in a six-month period. The company vice president and secretary attests that the company never officially had such a policy during the term of Garvey's employment. This factual issue must be resolved by the fact-finder before the ultimate question of whether an implied contract existed can be resolved. Therefore, we reverse the trial court's order

granting summary judgment and remand Garvey's breach of contract claim for further proceedings.

The trial court also dismissed Garvey's intentional infliction of emotional distress claim against Open Pantry and Buhler. The court ruled that Garvey's complaint failed to state a cause of action against either defendant. Whether a complaint states a claim is a question of law. *Williams v. Security Sav. & Loan Ass'n,* 120 Wis. 2d 480, 482, 355 N.W.2d 370, 372 (Ct. App. 1984). We are not bound by the trial court's conclusions of law. *Id.* The complaint did allege that Garvey suffered psychological and emotional injuries because of the act of the defendants and that this act was the cause of her injuries. However, as the trial court correctly noted, the facts pled do not show conduct on the part of the defendants which was either intended to cause emotional distress to Garvey or was extreme and outrageous. *See Alsteen v. Gehl,* 21 Wis. 2d 349, 359–61, 124 N.W.2d 312, 318 (1963). Therefore, we affirm the trial court's dismissal of Garvey's claim of intentional infliction of emotional distress.

Finally, Garvey asks us to reverse the trial court's order dismissing her claim for wrongful discharge against Open Pantry and Buhler. Again, this issue presents a question of law. *See Williams* at 482, 355 N.W.2d at 372. In order to state a claim for wrongful discharge, the discharged employee must "allege and attest that he was discharged for refusing to violate a constitutional or statutory provision." *Bushko v. Miller Brewing Co.,* 134 Wis. 2d 136, 141, 396 N.W.2d 167, 170 (1986). Garvey's pleadings allege that her termination violated fundamental and well-established pub-

lic policy as evidenced in sec. 103.455, Stats. *See Wandry v. Bulls Eye Credit Union,* 129 Wis. 2d 37, 384 N.W.2d 325 (1986). She also argues that *Brockmeyer v. Dun & Bradstreet,* 113 Wis. 2d 561, 335 N.W.2d 834 (1983), "recognized a cause of action for wrongful termination sounding in contract."

██

Garvey is wrong on both arguments. Section 103.455, Stats., prohibits an employer from deducting sums from an employee's wages to cover a business loss. In *Wandry,* the Wisconsin Supreme Court held that an employee who was discharged for refusing to allow her employer to deduct a business loss from her paycheck had a cause of action under sec. 103.455. *Wandry* at 47, 384 N.W.2d at 329. This case does not involve wage deduction and therefore does not present a sec. 103.455 violation.

Additionally, the supreme court in *Brockmeyer* did not recognize an all inclusive cause of action for wrongful termination. Rather, the court limited recognition of such actions to those involving violations of fundamental public policy. *Brockmeyer,* 113 Wis. 2d at 579, 335 N.W.2d at 843. No such violation is shown here. The trial court correctly dismissed this claim.

*By the Court.*—Order affirmed in part, reversed in part and cause remanded.