Shad A. CUMMINGS, and Brent W. Cummings, a minor, by his guardian, Debra Cummings, Plaintiffs-Appellants,

v.

Melissa A. KLAWITTER, United Security Insurance Company, Defendants,

HARCO NATIONAL INSURANCE COMPANY, Defendant-Respondent,†

GENERAL CASUALTY COMPANY OF WISCONSIN, Defendant.

Court of Appeals

*No. 92–1172. Submitted on briefs April 2, 1993.—Decided September 23, 1993.*

(Also reported in 506 N.W.2d 750.)

†Petition to review denied.

For the plaintiffs-appellants the cause was submitted on the briefs of *Richard J. Rathjen* of *Kubasta, Rathjen, Murach & Bickford* of Wautoma.

For the defendant-respondent the cause was submitted on the brief of *Patrick R. Russell* of *Otjen, Van Ert, Stangle, Lieb & Weir, S.C.* of Milwaukee.

For the Wisconsin Academy of Trial Lawyers an amicus curiae brief was submitted by *D. J. Weis* of *Johnson, Weis, Paulson & Priebe, S.C.* of Rhinelander.

Before Eich, C.J., Gartzke, P.J., and Dykman, J.

DYKMAN, J. Shad and Brent Cummings appeal from an order distributing the settlement of an action for the wrongful death of their father, Rodger Cummings. The issues are: (1) whether the appellants had

stipulated that all proceeds were subject to the allocation formula found in sec. 102.29(1), Stats.,[1] and that Harco National Insurance Company, the worker's compensation carrier for Rodger's employer, would receive two-thirds of the balance after deducting reasonable collection costs; and (2) whether damages recovered for either the loss of a parent's society and companionship or the parent's financial support are subject to allocation under sec. 102.29(1).

We conclude that there was no binding stipulation as to distribution of the proceeds because there was no meeting of the minds between the appellants and Harco. Furthermore, we hold that the appellants' claims for loss of their father's society and financial support are not subject to the sec. 102.29(1), Stats., allocation formula. Therefore, we reverse and remand

---

[1] Section 102.29(1), Stats., states in relevant part:

> The making of a claim for compensation against an employer or compensation insurer for the injury or death of an employe shall not affect the right of the employe, the employe's personal representative, or other person entitled to bring action, to make claim or maintain an action in tort against any other party for such injury or death . . . . The employer or compensation insurer who shall have paid or is obligated to pay a lawful claim under this chapter shall have the same right to make claim or maintain an action in tort against any other party for such injury or death. . . . If notice is given as provided in this subsection, the liability of the tort-feasor shall be determined as to all parties having a right to make claim, and irrespective of whether or not all parties join in prosecuting such claim, the proceeds of such claim shall be divided as follows: After deducting the reasonable cost of collection, one-third of the remainder shall in any event be paid to the injured employe or the employe's personal representative or other person entitled to bring action. Out of the balance remaining, the employer, insurance carrier or, if applicable, uninsured employers fund shall be reimbursed for all payments made by it, or which it may be obligated to make in the future, under this chapter . . . . Any balance remaining shall be paid to the employe or the employe's personal representative or other person entitled to bring action.

the cause. Upon remand, the trial court shall determine the amount of damages sustained by the appellants. As the total of appellants' damages and the death benefits paid by Harco will exceed the amount of the settlement, the trial court will have to follow the formula outlined in *Brewer v. Auto-Owners Ins. Co.*, 142 Wis. 2d 864, 418 N.W.2d 841 (Ct. App. 1987), to determine the ultimate distribution of the proceeds.

## FACTS

Rodger Cummings was killed in a car accident with Klawitter on August 15, 1989. The accident occurred during the course of his employment with Mid State Truck Service. Accordingly, the appellants applied for death benefits and received payments totaling nearly $92,000 from Harco.[2]

The vehicle driven by Klawitter was owned by her stepfather, Brian Wilson, and insured by United Security Insurance Company. Because Klawitter was a twenty-year-old, part-time student with negligible assets, the appellants settled the suit for $100,000, the limit of the United Security policy. A stipulation and order for dismissal incorporating the following language was drafted by counsel for the appellants, and signed by counsel for Harco as well as Klawitter and United Security:[3]

---

[2] Shad and Brent Cummings were both minors at the time of Rodger Cummings's death. Because Rodger was divorced, Shad and Brent received the death benefit. Shad turned eighteen years old on August 23, 1991.

[3] General Casualty Company of Wisconsin, which paid funeral expenses under an automobile liability policy covering Rodger Cummings, had previously waived any claim for reimbursement and had been dismissed as a party to the action.

IT IS HEREBY STIPULATED and agreed to by and between the parties hereto, by their respective attorneys, that the above and foregoing action be settled on its merits, with prejudice and without further costs to any party upon payment of the sum of $100,000 by defendant, UNITED SECURITY INSURANCE COMPANY, to plaintiffs, SHAD A. CUMMINGS and BRENT W. CUMMINGS, in full settlement of the above action, said payment to be made to the Portage County Clerk of Circuit Court[']s office for approval and distribution pursuant to Wisconsin Statutes Section 102.29.

Debra Cummings, the mother of the appellants and Brent Cummings's guardian, petitioned the trial court to approve the settlement and to order distribution pending further proceedings under sec. 102.29(1), Stats. Prior to the hearing on the petition, the appellants and Harco submitted briefs on the appropriate distribution. The parties advanced the same arguments in the trial court that they offer on appeal. The appellants maintained that neither loss of society nor pecuniary loss are subject to the sec. 102.29(1) formula, and that Harco was entitled to none of the proceeds. Harco countered that the stipulation bound the parties to an allocation in which Harco would receive two-thirds of the proceeds after deducting reasonable collection costs. Alternatively, Harco argued that both types of damages were subject to sec. 102.29(1) allocation under existing case law.

After the hearing, the trial court approved the settlement and allocated the proceeds in the manner requested by Harco: $33,675 to appellants' counsel for costs of collection; $22,108 divided equally between Shad and Brent Cummings; and $44,217 to Harco. The trial court adopted both of Harco's arguments as bases

for its order. Shad and Brent Cummings now appeal from this distribution.

## STANDARD OF REVIEW

Construction of a stipulation is a question of law. *Duhame v. Duhame*, 154 Wis. 2d 258, 262, 453 N.W.2d 149, 150 (Ct. App. 1989). Similarly, interpretation of a statute, in this case, sec. 102.29(1), Stats., presents a question of law. *Blackbourn v. School Dist. of Onalaska*, 174 Wis. 2d 496, 499, 497 N.W.2d 460, 461 (Ct. App. 1993). Our review is *de novo. Id.*

## EFFECT OF STIPULATION

A stipulation is contractual in nature, and the trial court must seek a construction which gives effect to the parties' apparent intention. *Duhame*, 154 Wis. 2d at 264, 453 N.W.2d at 151. Where the language of the stipulation is ambiguous, the trial court may consider extrinsic evidence to ascertain the parties' intent. *See id.* at 264-67, 453 N.W.2d at 151-52. Language is ambiguous if it is reasonably susceptible of more than one meaning. *Id.* at 266, 453 N.W.2d at 152.

██

The parties' dispute stems from the clause, "said payment to be made to the Portage County Clerk of Circuit Court[']s office for approval and distribution pursuant to Wisconsin Statutes Section 102.29." While Harco claims that the parties agreed that all proceeds were subject to sec. 102.29(1), Stats., allocation, the appellants contend that the parties anticipated further proceedings in which the trial court would determine which claims were subject to sec. 102.29(1) and then apply the formula accordingly. As the clause is reason-

ably susceptible to both interpretations, it is ambiguous, and we look to extrinsic evidence to determine the parties' intent. *See Duhame,* 154 Wis. 2d at 264-67, 453 N.W.2d at 151-52.

Debra Cummings's petition to approve the settlement offers one instance of such evidence. In paragraph twelve, Cummings acknowledged that Harco, as the worker's compensation carrier for Rodger's employer, made payments "such that, in distribution of the proceeds of this settlement, the [c]ourt must consider Wisconsin Statutes Section 102.20(1) [sic]."[4] Cummings requested the trial court to issue an order approving the settlement and allocating half, or $50,000, to Brent Cummings.[5] In addition, Cummings sought a "further [o]rder for distribution pending proceedings under Wisconsin Statutes Section 102.29(1)."

The petition supports the appellants' position that they anticipated further proceedings to determine which funds were subject to the sec. 102.29(1), Stats., distribution formula when the stipulation was filed. On the other hand, Harco's trial court brief and comments by its counsel at the hearing indicate that Harco understood that it was to receive two-thirds of the net settlement proceeds. The extrinsic evidence suggests that there was no mutual understanding as to distribu-

---

[4] Given the dispute in this case, it is apparent that Cummings meant sec. 102.29(1), Stats. There is no subsection of sec. 102.20, Stats., which deals with the circuit court rendering judgment on a final award of compensation.

[5] It is not clear why the petition requested that $50,000 be allocated to Brent Cummings. Section 895.04(4), Stats. (1989-90), limited recovery for loss of society and companionship to $50,000.

tion of the settlement. Just as no contract exists without the so-called "meeting of the minds," we conclude that there is no stipulation to enforce with respect to distribution of the settlement proceeds. *See Garvey v. Buhler*, 146 Wis. 2d 281, 289, 430 N.W.2d 616, 619 (Ct. App. 1988).[6]

## DISTRIBUTION OF PROCEEDS

Absent an agreement to the contrary, the proceeds of a third-party action in a worker's compensation case must be allocated according to sec. 102.29(1), Stats. *Kottka v. PPG Indus.*, 130 Wis. 2d 499, 510, 388 N.W.2d 160, 165 (1986). To make this determination, we must first resolve the question as to which damage claims are to be included in the fund subject to allocation. While none of the cases cited by the parties involve loss of a parent's society or financial support, we believe that *Kottka* provides the appropriate test for deciding whether recovery for either loss is subject to allocation.

In *Kottka*, the parties disputed whether claims for the employee's pain and suffering and the surviving spouse's loss of consortium prior to the employee's death from a work-related injury were claims within

[6] By concluding that the stipulation is not enforceable as to distribution of the proceeds, we are not voiding the settlement between United Security and Klawitter on the one hand, and Harco and the appellants on the other. Also, our conclusion does not result in prejudice to Harco. Although Harco argued at the hearing that it waived the right to try its claim based on its understanding of the stipulation, no such argument is found in its appellate brief. Issues not briefed are deemed abandoned. *State v. S.H.*, 159 Wis. 2d 730, 738, 465 N.W.2d 238, 241 (Ct. App. 1990).

the meaning of sec. 102.29(1), Stats. The supreme court stated that for sec. 102.29(1) to apply, the claim has to be: (1) a claim for the injury or death of an employee; and (2) a claim for which the employer or its insurer has, or may have, liability. *Kottka*, 130 Wis. 2d at 514, 521-22, 388 N.W.2d at 167, 170.

Applying this two-part test, the court concluded that sec. 102.29(1), Stats., did not encompass the claim for loss of consortium. The court reasoned that loss of consortium was an injury which was personal to the surviving spouse; hence the claim could not be for the employee's injury or death. *Kottka*, 130 Wis. 2d at 521-22, 388 N.W.2d at 170. Furthermore, because the surviving spouse could not maintain a cause of action against the employer for this loss, the employer and its insurer had no liability for this claim. *Id.* at 522, 388 N.W.2d at 170.

From the court's discussion, it appears that, contrary to Harco's contention, the court would have reached the same conclusion had the claim been for a loss of consortium following the employee's death. This is because the claim would still have been one for personal injury to the surviving spouse, and the surviving spouse would have been barred by the exclusive remedy provision of sec. 102.03(2), Stats., from asserting the claim against either the employer or insurer as part of a wrongful death action. *See* sec. 895.04(4), Stats.

■

Applying the *Kottka* test to the appellants' claims for loss of their father's society and financial support, we conclude that neither claim falls under sec. 102.29(1), Stats. The two types of loss represent personal injuries to the appellants, and, thus, were not

claims for Rodger Cummings's injury or death.[7] Furthermore, the two types of loss were asserted as part of a wrongful death action, *see* sec. 895.04(4), Stats., which the appellants could not have maintained against Harco or Mid State Truck Service. *See* sec. 102.03(2), Stats. Therefore, neither Harco nor Mid State Truck Service were liable for, or could have been liable for, the two claims.

Based on this conclusion, the trial court's allocation of the proceeds cannot be sustained. On remand, the trial court must determine the appellants' damages for loss of their father's society and pecuniary support. Further, the total of the death benefit paid by Harco and the appellants' damages not subject to the statutory distribution formula will exceed the amount of the settlement. Therefore, the trial court will have to follow the procedure outlined in *Brewer v. Auto-Owners Ins. Co.*, 142 Wis. 2d 864, 868-69, 418 N.W.2d 841, 843 (Ct.

---

[7] We find support for treating loss of a parent's society as analogous to a spouse's loss of consortium in sec. 895.04(4), Stats., and *Theama v. City of Kenosha*, 117 Wis. 2d 508, 344 N.W.2d 513 (1984), which created the right to recover for the former. Section 895.04(4) allows "[a]dditional damages" to be awarded to the spouse, children or parents of the deceased for loss of society and companionship. In *Theama*, the supreme court stated:

> Our decisions [*Moran v. Quality Aluminum Casting Co.*, 34 Wis. 2d 542, 150 N.W.2d 137 (1967), and *Shockley v. Prier*, 66 Wis. 2d 394, 225 N.W.2d 495 (1975)] protected the emotional or sentimental aspects of the husband-wife relationship and the parents' interests in rearing their child. It is only logical that the next step in this progression is to protect the child's interest in the parent-child relationship.

117 Wis. 2d at 519, 344 N.W.2d at 518.

App. 1987), to determine the ultimate distribution of the settlement proceeds.[8]

We recognize that as a result of our decision, the appellants and others similarly situated may obtain a double recovery for pecuniary loss, which, to a large extent, is compensated by the award of a death benefit under sec. 102.46, Stats. We also recognize the anomaly that had Rodger Cummings survived, a greater percentage of the proceeds of an action against Klawitter would have been subject to allocation, while the burden of supporting his children would not have been lessened. But we are bound by the decisions of our supreme court. *State v. Lossman*, 118 Wis. 2d 526, 533, 348 N.W.2d 159, 163 (1984). Our construction of sec. 102.29(1), Stats., is consistent with *Kottka*.

*By the Court.*—Order reversed and cause remanded with directions.

---

[8] The steps to be taken are as follows:

1. Determine the value of each claim;
2. Prorate the settlement proceeds among all claims;
3. Distribute to claimants the amounts allocated to claims not subject to sec. 102.29(1), Stats., after deducting reasonable collection costs;
4. Distribute remaining claims as follows:

 (a) deduct reasonable collection costs;
 (b) allocate 1/3 to "employe's personal representative or other person entitled to bring action";
 (c) out of balance, the insurance carrier is to be repaid for the payments it has made or is obligated to make;
 (d) any funds remaining must be paid to the "employe's personal representative or other person entitled to bring action."

*Brewer v. Auto-Owners Ins. Co.*, 142 Wis. 2d 864, 869, 418 N.W.2d 841, 843 (Ct. App. 1987).

GARTZKE, P.J. (*concurring*). I concur with the result but not the analysis.

Disposition of the $100,000 settlement is subject to whatever applicability sec. 102.29, Stats., may have. That is the only significance of the last provision in the stipulation that the payment "be made to the Portage County Clerk of Circuit Court[']s office for approval and distribution pursuant to Wisconsin Statutes Section 102.29."

It therefore is unnecessary to determine the intent of the parties on the basis of extrinsic evidence. If that were necessary, I would remand this matter to the trial court for its determination on the basis of that evidence. We are constitutionally prohibited from resolving disputed issues of fact. *Wurtz v. Fleischman*, 97 Wis. 2d 100, 107 n.3, 293 N.W.2d 155, 159 n.3 (1980).

Consequently, we should look to the statute, sec. 102.29(1), Stats., to determine whether it applies. It is reasonable to assume that this action was settled on the basis of the damages claimed by the plaintiffs' in their complaint. The question is the extent to which sec. 102.29(1) applies to distribution of the $100,000 among those claims. I agree that because appellants' claims for loss of their father's society and financial support do not come within sec. 102.29(1), the trial court's allocation must be reversed, and a remand is necessary for a distribution order under *Brewer v. Auto-Owners Ins. Co.*, 142 Wis. 2d 864, 418 N.W.2d 841 (Ct. App. 1987).