Marilyn **BROADNAX**, as Independent Administrator of the Estate of Franco **JACKSON**, deceased, Plaintiff,

v.

**ABF FREIGHT SYSTEMS, INC.,** et al., Defendants.

No. 96 C 1674.

United States District Court,
N.D. Illinois,
Eastern Division.

July 30, 1999.

Douglas W. Bristol, Chicago, IL, for Plaintiff.

Thomas E. Patterson, Hickey, Driscoll, Kurfirst, Patterson & Melia, Chicago, IL, for Defendant.

Richard Ceman, Jr., Boscom, Budish & Ceman, Milwaukee, WI, for Lien Holder.

## MEMORANDUM ORDER

BOBRICK, United States Magistrate Judge.

Before this court is plaintiff Marilyn Broadnax's **MOTION TO ADJUDICATE LIEN.** On February 23, 1996, Franco Jackson was involved in a vehicle collision which resulted in his death. Marilyn Broadnax, Independent Administrator of the estate of Franco Jackson, brought this wrongful death lawsuit alleging that the defendants were liable to the estate as a result of the death of Franco Jackson. On October 14, 1998, the estate of Franco Jackson settled this wrongful death lawsuit in the amount of $700,000.00. CIGNA Insurance Company ("CIGNA") has brought a claim for a workman's compensation lien against the settlement proceeds in this matter under Wisconsin law. Plaintiff Marilyn Broadnax seeks to adjudicate the above lien to zero.

## I. FACTS

On February 23, 1996, Franco Jackson was driving a semi-tractor trailer eastbound on U.S. Highway 158 in Stokesdale, North Carolina. At the same time Dale Palmer Searer, Jr., was driving a semi-tractor trailer westbound on U.S. Highway 158. Mr. Searer allowed his vehicle to cross the center lane of U.S. Highway 158 and collided with the vehicle driven by Mr. Jackson. As a result of this accident, Mr. Jackson was killed.

At the time of the accident, Mr. Jackson was employed by Millis Transfer, Inc. and was within the scope of his employment. Because Mr. Jackson was employed by Millis Transfer, Inc., Mr. Jackson's estate is entitled to benefits pursuant to the Wisconsin Worker's Compensation Act. The State of Wisconsin, Department of Industry, Labor and Human Relations, Worker's Compensation Division, determined that the estate was entitled to worker's compensation death benefits in the total amount of $90,831.04, and burial expenses in the total amount of $4,200.00 pursuant to Wisconsin Statute 102.46/102.51.[1] CIG-

1. Section 102.46, Stats. (1993–94), provides:

Where death proximately results from the

NA, worker's compensation insurer for Millis Transfer, Inc., has paid, and continues to pay, worker compensation benefits to the estate of Franco Jackson.

CIGNA has brought a workman's compensation lien against the settlement proceeds in this matter claiming that it is entitled to recover the amounts that it has paid, and is obliged to pay in the future. Plaintiff, Marilyn Broadnax, claims that the settlement reached in this case was based entirely on the loss of society suffered by Franco Jackson's minor children, Kaneisha and Marquise, and, therefore, that CIGNA has no claim for a workman's compensation lien against the settlement proceeds.

## II. ANALYSIS

The statutory distribution of proceeds from a third-party tort claim is governed by Wisconsin Statute § 102.29.[2] The Wisconsin Supreme Court set out the test for applying § 102.29 in *Kottka v. PPG Industries, Inc.,* 130 Wis.2d 499, 388 N.W.2d 160 (1986). There the court held that § 102.29 "applies to all claims in tort for an employ-

> injury and the deceased leaves a person wholly dependent upon him or her for support, the death benefit shall equal 4 times his or her average annual earnings, but when added to the disability indemnity paid and due at the time of death, shall not exceed two-thirds of weekly wage for the number of weeks set out in § 102.44(3).

2. Section 102.29(1), Stats., states in relevant part:
> The making of a claim for compensation against an employer or compensation insurer for the injury or death of an employee shall not affect the right of the employee; the employee's personal representative, or other person entitled to bring action, to make claim or maintain an action in tort against any other party for such injury or death.... If notice is given as provided in this subsection, the liability of the tort-feasor shall be determined as to all parties having a right to make claim, and irrespective of whether or not all parties join in prosecuting such claim, the proceeds of such claim shall be divided as follows: After deducting the reasonable cost of collection, one-third of the remainder shall in any event be paid to the injured employee or the

ee's injury or death for which the employer or its insurer has or may have liability." *Id.* at 514.

Plaintiff cites *Cummings v. Klawitter,* 179 Wis.2d 408, 506 N.W.2d 750 (App.1993) for the proposition that a claim for loss of society is an injury personal to the children of the deceased and is not a claim for the father's injury or death. Such a claim is not subject to distribution under § 102.29. CIGNA notes that *Cummings* was overruled by *Johnson v. ABC Insurance Company* 193 Wis.2d 35, 532 N.W.2d 130 (1995). The *Johnson* court, however, overruled *Cummings* only to the extent that *pecuniary damages* in a wrongful death action are subject to the distribution under Wisconsin Statute § 102.29. The *Johnson* court specifically upheld *Cummings* in that "damages for loss of consortium prior to the decedent's death are not subject to distribution." *Id.*[3] The court reasoned that "the elements of loss of society ... are personal to the claiming spouse and apart from the claim of the injured spouse." *Id.*[4]

> employee's personal representative or other person entitled to bring action. Out of the balance remaining, the employer, insurance carrier or, if applicable, uninsured employers fund shall be reimbursed for all payments made by it, or which it may be obligated to make in the future, under this chapter.... Any balance remaining shall be paid to the employee or the employee's personal representative or other person entitled to bring action.

3. In fact, CIGNA acknowledges in their response to plaintiff's motion that the portion of the settlement attributable to the loss of society and companionship by Mr. Jackson's children is not subject to distribution.

4. There is ample support for treating loss of a parent's society as analogous to a spouse's loss of consortium in § 895.04(4), Stats., and *Theama v. City of Kenosha,* 117 Wis.2d 508, 344 N.W.2d 513 (1984), which created the right to recover for the former. Section 895.04(4) allows "[a]dditional damages" to be awarded to the spouse, children or parents of the deceased for loss of society and companionship.

This court must, therefore, determine what portions of the total settlement are attributable to the loss of society and companionship to Mr. Jackson's two children; the pecuniary loss to Mr. Jackson's children as a result of his death; and the pain and suffering experienced by Mr. Jackson prior to his death. The workman's compensation lien cannot attach to that portion of the settlement proceeds attributable to the loss of society and companionship.

Plaintiff asserts that the entire settlement was based on the loss of society suffered by Mr. Jackson's two children. Not surprisingly, CIGNA suggests that $225,000.00 of the $700.000.00 settlement is attributable to recovery other than the loss of society suffered by Mr. Jackson's minor children. Using this figure, there would be enough money to fully reimburse CIGNA for the payments made to date, and a credit sufficient to eliminate the future payment responsibility for the benefits not yet paid.

### A.  *Pecuniary Damages*

Pecuniary damage is defined as follows:
1.  What money the decedent contributed in the past;
2.  What money the decedent was likely to have contributed in the future;
3.  Decedent's personal expenses;
4.  Decedent's habits of industry, sobriety and thrift.

(Illinois Pattern Jury Instruction No. 31.06).

When Mr. Jackson's limited earnings are considered, less his personal consumption, there is little or no pecuniary damage suffered by his minor children. As plaintiff points out, Mr. Jackson was not a powerful wage earner. His income over the three years preceding his death was $9,185.00 in 1993; $9,100.00 in 1994, and $16, 311.00 in 1995. When Mr. Jackson's personal consumption is subtracted, these figures are reduced even further. Witnesses testified that Mr. Jackson paid a portion of mortgage, utilities and grocery bills for his mother. Witnesses further testified that Mr. Jackson provided monetary support to Melvin Paige, Lonnie Middleton, Kimberly Paige, and Pamela Middleton (none of whom may recover for pecuniary damage). As for Mr. Jackson's habits of industry, sobriety, and thrift, he had a mixed record as a provider and clearly was not thrifty. Mr. Jackson was a truck driver who, at one time, had lost his license for one and a half years because of moving violations and speeding tickets. For these reasons, it is clear that Mr. Jackson's pecuniary support to his minor children was minimal, if there was any at all.

### B.  *Pain and Suffering*

Clearly no portion of the $700,000.00 settlement figure was attributable to Mr. Jackson's pain and suffering. This vehicle collision involved two semi-tractor trailers. Mr. Jackson's cab collided with the second of two semi-trailers being pulled by the second driver. His vehicle exploded into flames before coming to a rest. The autopsy report indicates massive head injuries as the cause of Mr. Jackson's death. Apparently, Mr. Jackson's blood carbon monoxide was within normal limits and no soot was found within his air passages. The medical examiner concluded that Mr. Jackson was dead before the fire started, that is, even before his semi-tractor trailer came to rest. Given the conclusions of the medical examiner and the description of the accident, it is clear that Mr. Jackson's death was immediate and, thus, involving no cognizable claim for pain and suffering.

### C.  *Loss of Society*

Loss of society is defined as the mutual benefits that each family member receives from the other's continued existence, including love, affection, care, attention, companionship, comfort, guidance, and protection.[5] There is evidence in the record that Franco Jackson had a loving and caring relationship with his minor children. Witnesses testified that Mr. Jackson showed the love, advice, companionship

---

**5.**  Illinois Pattern Jury Instruction 31.11

and instruction of a devoted father to his children. Furthermore, this court notes that Wis. Stat. § 895.04(4) (1998) provides that:

> "Judgment for damages for pecuniary injury from wrongful death may be awarded to any person entitled to bring a wrongful death action. Additional damages not to exceed ... $350,000 per occurrence in the case of a deceased adult, for loss of society and companionship may be awarded to the spouse, children or parents of the deceased...."

If Kaneisha and Marquise each receive the maximum damages for loss of society and companionship permitted by § 895.04(4), the settlement figure of $700,000.00 is reached. This court finds that this is further extrinsic evidence that the settlement of this case was based solely on the loss of society suffered by Mr. Jackson's two minor children and not on any pecuniary loss or for pain and suffering. As such, the workman's compensation lien cannot attach to the settlement proceeds.

### III. *CONCLUSION*

For the above stated reasons, it is determined that the settlement proceeds in this matter are solely attributable to the loss of society suffered by Franco Jackson's two minor children and not subject to any allocation under CIGNA's lien. It is hereby ordered that plaintiff's MOTION TO ADJUDICATE LIEN is GRANTED. Accordingly, CIGNA's claim is hereby adjudicated as zero and is DENIED.